# GENERAL SERVICES ADMINISTRATION
# GEORGE A. SHORT

State Of _____

County of _____


I, <u>Mr. George A. Short</u> make the following statement freely and voluntarily to Robert Bradley who has identified himself to me as an EEO INVESTIGATOR for the U.S. Government Printing Office, knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to any interested party.


I HEREBY SOLEMNLY _____ to the following:
           **(SWEAR OR AFFIRM)**


My name is George A. Short (Black, fair skinned, DOB: 04/01/43), Corporal (lead) Police Officer, GS-083-9. I have been working for the Agency for about thirty-two years. I allege first that I have been discriminated against because of my race (Black), color (fair skinned), and age (59 years-DOB:4/1/43), when I were not selected by FPS Police management for the Buffalo, New York deployment on September 18, 2002. I have not been selected for a deployment in the past two years. I am one of the senior members of the ERT team but I am not being offered deployment opportunities. I do not know who made the decision as to who would be deployed to Buffalo, New York on September 18, 2002. I do not recall who was selected to go on this deployment. I do know they were all younger than I was. I don't know what the process that was used to make the selections

Page 1 Of 6                                                Initial _____



for this deployment. It is my allegation that if it were not for my age I would have been selected for the subject deployment. My second allegation of discrimination is based on the fact I feel I have been discriminated against because my race (Black) and color, when I was suspended from duty from October 22, 2002 to November 20, 2002. The disciplinary action contained three specific charges. They were 1) Failure to follow Instruction; 2) Disrespectful Behavior Toward a Supervisor; 3) Absent Without Leave (AWOL). I deny the charge that I failed to follow instruction. The incident took place on June 18, 2002. On this date I was working in the position of acting supervision. A call came in reporting that there was a visitor at the Reagan Building who was found to have a gun. Two officers were dispatched by Suitland Mega Center, to the building to investigate. I later joined them there. When I arrived on the scene I was made aware that the gun was not on the person but was in the trunk of his vehicle and the bullets were located away from the gun in his vehicle glove compartment. I had questions as to how to proceed with this situation so I called the office of the US Attorney. This is the procedure we were instructed to follow. I made attempts to call my supervisor Lt. Thomas to get advise but I could not reach him and he never returned any of my attempts to communicate with him. Lt. Thomas also failed to come to the scene of the incident, which he should have done since he was the supervisor and the senior officer on duty. I made the call the US Attorney's office before I was told by Lt. Thomas contacted me and stated he wanted me to arrest the tourist with the gun. The tourist never went into the building with the gun. We are trained that anytime we have an arrest but do not know

Page 2 of 6                                                     Initial _____

what to charge the suspect, we should contact the US Attorney at the Justice Department. We also did a background check on the person. When the background check came back it did not reflect any charges against the man. After I explained the situation to the representative of the US Attorney's Office I was told not to arrest the visitor. I followed this instruction. When I returned back to the office Lt. Thomas confronted me and stated that his decision to release the visitor with the gun was improper. I feel he was making negative statements about the situation in an attempt to provoke me. I told him I tried to call but he failed to respond to my radio calls. Lt. Thomas did push me to the point I directed a racial slur at him. I do not feel that I should have been charged with AWOL. On June 29, 2002, I requested emergency leave from my supervisor Lt. Thomas so I could take my wife to the hospital. I was instructed to submit medical evidence when I return. I was unable to get a doctor's slip but I was able to present a copy of a Hospital Registration Form with my wife's condition and the treatment. Even with this documentation I was charged with AWOL. On July 3, 2002, I called in because I was ill. I was on sick leave until July 5, 2002. When I returned I provided medical documentation to cover my absence I was still charged with AWOL. No one else is treated in this manner. I also allege reprisal discrimination an EEO complaint on October 23, 2002, which was amended on November 14, 2002. I have been subjected to continuous retaliation and harassment from November 21, 2002 through January 1, 2003, "regarding my weapon, work assignments, my vehicle, denial of leave, and missing supplies." The following acts of harassment and reprisal support my allegation of

Page 3 of 6                                                               Initial _____

reprisal discrimination:

1. November 21, 2002, 3:00 PM no weapon was in the safe for me to go into complete uniform. Lt. Black, (My Team Leader) stated my weapon was sent to the Pistol Range and the range had closed at 2:00 PM. I worked in the office because of no weapon. A) At 4:17 PM Lt. R. Thomas personally gave me some paper work, (pay slip for pay period of suspension and an envelope, containing a copy of a request for personnel action, and return to duty from 30 days suspension). B) At 10:25 PM Capt. W. Mitchell came into the office, he did not speak or welcome me back. His first and only words were "Did you get enough rest."

2. November 22, 2002, (3:00 PM) Weapon was issued, but no vehicle. My assign vehicle was missing with all my equipment and supplies. My vehicle was turned into Capt. W. Mitchell October 22, 2002, 11:15 PM. November 22, 2002, 4:00 PM Capt. W. Mitchell stated he turned my vehicle in with equipment and supplies over to Major W. Waters. I had to use a spare vehicle without m y equipment and supplies, which also included body armor. (Vest)

3. November 26, 2002, 4:00PM Lt. R. Thomas gave me a book and key to vehicle #981 and stated this is your assigned vehicle with no paper work, I did not drive vehicle #981 homes because of not paper work and improper procedure.

4. November 27, 2002, I signed for vehicle #981 and gave the proper paper work to

5. Lt. R. Thomas. Vehicle #981 is a 2000 model and my old assigned vehicle #997 is a 2002 model.

6. On November 28, 2002, I was denied leave for Thanksgiving Day, by Lt. R. Thomas. He did not notify me concerning my disapproved leave. I had to find out on my own, the day before Thanksgiving Day.

7. December 2, 2002, 2:00 PM, I went to work one hour early to get my equipment and supplies. I went to Logistics to get my equipment. Demiko Suggs was in charge at this time and he gave me my equipment and supplies. There was no inventory slip to sign because none was taken, by anyone. I made a quick check because I had to go to roll call and not knowing at this time that all my supplies were not there. Later that night I made another check and found the following items missing. Two computer speakers, power inverter and vehicle cleaning supplies.

8. December 4, 2002, I contacted Capt. W. Mitchell and Major W. Waters concerning my missing supplies, but with negative result. About 9:00 PM that same day FPO George Bland wrote a 3155 report on my missing supplies.

9. December 5, 2002, 3:00 PM when I arrived at FPS office, I was approach by FPOD. Parry and she gave me a property recipe to sign and a box with all the missing supplies. I could not get any information as to who had my supplies.

10. December 18, 2002, I discovered my leave was disapproved by Lt. R. Thomas. The record shows I was once again denied leave for December 25, 2002. Again I

was not notified of the disapproved leave. My leave was approved for the 24 of December 2002. I did not take the approved leave for December 24, 2002. I worked Christmas Eve and Christmas Day.

11. December 28, 2002, for the record I discovered my leave for January 1, 2003 was disapproved and December 31, 2002, approved. This time I took December 31, 2002 and worked New Year Day.

All these incidents support the fact that I am subjected to reprisal discrimination. I have never observed any of the White or younger officers being treated in the manner I had be by management.

I HAVE READ THE ABOVE STATEMENT, CONSISTING OF ___6___ PAGES, AND IT IS TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE AND BELIEF. I UNDERSTAND THAT THE INFORMATION I HAVE GIVEN IS NOT TO BE CONSIDERED CONFIDENTIAL AND THAT IT MAY BE SHOWN TO THE INTERESTED PARTIES.

_____    _____
RESPONDENT'S SIGNATURE              Date

_____
INVESTIGATOR

## PRIVACY ANC NOTICE TO EEO COMPLAINT FOR DISCRIMINATION COMPLAINT INVESTIGATION INTERVIEW

### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

### AUTHORITY

The Authority to collect the information requested by affidavit, statement or other type of testimony is derived from one or more of the following:

Title 5, Code of Federal Regulations, sections 5.2 and 5.3; Title 29, Code of Federal Regulations, section 1614.216; Title 5, United States Code, sections 1303 and 1304; Title 42, United States Code, section 2000e-16; and Executive Order 11478, as amended.

### PURPOSES AND USES

The information you supply will be used along with data you supplied previously and information developed by investigation to resolve your equal employment opportunity discrimination complaint. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve your equal employment opportunity discrimination complaint. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to Equal Employment Opportunity Commission activities, to the intelligence agencies of the Federal Government, or to others for uses published in the Federal Register.

### EFFECTS OF NON-DISCLOSURE

Disclosure of information sought is voluntary. However, failure to furnish the information will result in your complaint being returned without action and being recommended for cancellation for failure to prosecute.

_____        _____
Complainant                            Investigator

Date: _____

Place _____