# U.S. GENERAL SERVICES ADMINISTRATION
## Lieutenant Reginald Thomas

State Of __Washington DC__

County of _____

I, Reginald Thomas make the following statement freely and voluntarily to Robert Bradley who has identified himself to me as an EEO INVESTIGATOR for the United States General Services Administration knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to any interested party.

I HEREBY SOLEMNLY _____ to the following:
### (SWEAR OR AFFIRM)

My name is Reginald Thomas (Black, medium brown, DOB: 6/25/49), Lieutenant, Supervisory Police Officer, GS-11. I have been with the agency since November 20, 1972 I am currently the complainant's second level supervisor I was not involved in the selection process for the deployment to Buffalo, New York on September 18, 2002.

It was my recommendation to issue the complainant a letter of suspension. The request was based on three specific charges which were: (1) Failure to follow instructions; (2) Disrespectful Behavior Toward a Supervisor; and (3) Absent Without Leave (AWOL). The first charge was based on the events of June 8, 2002. The complainant responded to a report of a man with a gun at the Ronald Reagan Building. After the complainant arrived on the scene he called and briefed me on the situation. After hearing the facts I

1 of 5

Initial _RLT_

EXHIBIT
ROI-2
8

instructed the complainant to charge the suspect and bring him to building 74. These instructions were given to the complainant at least three different times. I asked the complainant if he had a problem with the instructions and he replied that he did not. At approximately 5:55 PM I learned that the complainant had let the suspect leave and returned to him the unregistered handgun, removing only the ammunition from the weapon. The complainant was then summoned to the office to explain to me why he released the suspect and return the handgun back to him. This discussion was held in private. The complainant explained why he had made the subject decision. The complainant said he called someone in the US Attorney's Office and discussed the situation. The complainant said she responded to him by saying if she was the papering attorney she would not have the suspect arrested. I discussed the matter with the person in the US Attorney's Office and asked why she had instructed the complainant to release the suspect. She responded by saying the complainant had not provided her all the information relating to the issue. The US Attorney stated she was told the suspect did not have a record however it was later determined he had one. I informed the complainant that his decision was improper and wrong. I asked him why he failed to follow my instructions. He could not provide a logical reason why he released the suspect and returned the handgun back to the suspect. The complainant then left the privacy area and went to the CDO Office where Officer Kevin Williamson was present and he began to berate me. He stated, "Lieutenant the problem with these dumb Black Niggers." I then asked him if he was referring to me as a dumb Black Nigger and he replied, "that right Lt.

2 of 5

Initial *PBt*

That's what I said these dumb Black Niggers thank they know everything. He continued to berate by saying that's why there is so many problems with you and that's why everyone else have a problem with your and why none of the officers like you. These statements led to the charge of Disrespectful Behavior Towards a Supervisor. The third charge related to the fact complainant failed to report to duty on June 29, 2002 and July 4, 2002. The Complainant submitted a Request For Leave Or Approved Absence dated June 17, 2002, for June 29, 2002. The reason for the leave was a family wedding. This leave was not approved based on a June 19, 2002, Memo from Don Waldon, Lieutenant Colonel. The subject was: Cancellation Of Day Off. This action was taken because their was a demonstration/march on the Department of Justice Headquarters scheduled for June 29, 2002. The complainant was not singled out for this action. The day off for all officers on June 29, 2002, was cancelled. The complainant still called in to take emergency leave because of his wife's illness. Also on June 28, 2002, when the complainant was told his leave would not be approved he stated he would not be in. Also the complainant requested to be off on leave July 4, 2002. This request was also denied because of a shortage of personnel. The complainant still called in on July 3, 2002, and did not return to duty until July 6, 2002. The complainant provided medical documentation stating he was totally incapacitated from July 3, 2002 to July 8, 2002. The Disability certificate also stated the complainant was sufficiently recovered to resume a normal workload as of July 3, 2002. The medical documentation was found not to be acceptable. The above cited three incidents resulted in the complainant being

Page 3 of 5                                                                 Initial _PLF_

issued a proposed notice of suspension and then a suspension. I deny that I ever discriminated or harassed the complainant because he filled an EEO complaint. In response to his allegations he was harassed I submit the following explanations. When the complainant reported back to duty after completing his suspension on November 21, 2002 his weapon was not in the safe. This was not an act of reprisal. Whenever a weapon is out of use for a period of time it is sent to the pistol range to be stored in the safe. When it is to be returned to service it is sent back. Someone just forgot to have it sent back on November 21, 2002. It was there the next day for his use. The complainant did not turn his vehicle in to me. He turned it into Captain Mitchell. When he returned to duty he did inform me he did not have a vehicle. I then assigned a car to him for use. Complainant asked about personal items he had left in the vehicle he was assigned prior to going on suspension. It is my understanding that when he turned the vehicle into Capt. Mitchell he was given the opportunity to get his items before he left. When I assigned the complainant a vehicle I simple assigned him one that was available. The one he had prior to the suspension had been reassigned. It was not my intention to take him down a notch by assigning him a vehicle that was a year older than the vehicle he had. Yes I did disapprove the complainant's request for leave November 28, 2002. However, I deny I waited until the last minute to notify him. All request are maintained in a separate book and this book is maintained by the complainant. He often signs off on the leave request in the book. Yes the complainant's leave request for November 28, 2002 and January 1, 2003 were disapproved. This was not based on reprisal discrimination but due to the fact we were short handed and needed him to work.

I HAVE READ THE ABOVE STATEMENT, CONSISTING OF __5__ PAGES, AND IT IS TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE AND BELIEF. I UNDERSTAND THAT THE INFORMATION I HAVE GIVEN IS NOT TO BE CONSIDERED CONFIDENTIAL AND THAT IT MAY BE SHOWN TO THE INTERESTED PARTIES.

_Reginald Thomas_
RESPONDENT'S SIGNATURE

_Robert Bradley_
INVESTIGATOR

5/23/03
Date

# U.S. GENERAL SERVICES ADMINISTRATION
## Captain West Mitchell

State Of _____Washington DC_____

County of _____

I, ~~West~~ Webb Mitchell make the following statement freely and voluntarily to Robert Bradley who has identified himself to me as an EEO INVESTIGATOR for the United States General Services Administration knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to any interested party.

I HEREBY SOLEMNLY _____ to the following:
(SWEAR OR AFFIRM)

My name is Captain ~~West~~ Webb Mitchell (Black, Light brown, DOB: 1/27/48), Commander Second Shift, Supervisory Police Officer, GS-12. I am the complainant's third level supervisor. I was not involved in the decision not to deploy the complainant to Buffalo, New York on September 18, 2002. My only involvement in the complainant being issued a suspension from duty from October 22, 2002 to November 20, 2002, was that I had concurred with the action. I deny that I have been involved in any discriminating against the complainant because of his race, color or age. I was also not involved in any attempts to subject the complainant to reprisal discrimination when he returned from his suspension. It was true that on November 21, 2002 when the complainant returned to duty after his suspension his gun was at the pistol range. This is not unusual. When officers are away for extended periods of time their weapons are placed in storage at the pistol range. When he returned to work his weapon had not been returned to the safe.

Page 1 of 2

Initial _____


EXHIBIT
ROI-2
9

While this was a over sight it was not an attempt to subject the complainant to reprisal discrimination. When the complainant went on suspension he turned his weapon in to me. I also took the keys to his assigned vehicle. I instructed him to take his equipment out of the vehicle and take it home with him. I even provided a vehicle to take him home so he would have a way to get his equipment home. His vehicle was then parked on the lot. The next day Major Waters asked for the key and I gave it to him. The vehicle was reassigned while the complainant was on suspension. I had no involvement in it being reassigned. I was not aware the complainant had left his supplies in the vehicle, since I had instructed him to remove his supplies. Complainant was assigned a different vehicle when he returned.

I HAVE READ THE ABOVE STATEMENT, CONSISTING OF ___2___ PAGES, AND IT IS TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE AND BELIEF. I UNDERSTAND THAT THE INFORMATION I HAVE GIVEN IS NOT TO BE CONSIDERED CONFIDENTIAL AND THAT IT MAY BE SHOWN TO THE INTERESTED PARTIES.

_____    ___5/21/03___
RESPONDENT'S SIGNATURE           Date

_____
INVESTIGATOR

# U.S. GENERAL SERVICES ADMINISTRATION
# DON WALDON

State Of       Washington DC

County of

I, Don Waldon make the following statement freely and voluntarily to Robert Bradley who has identified himself to me as an EEO INVESTIGATOR for the United States General Services Administration knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to any interested party.

I HEREBY SOLEMNLY _____ to the following:
(SWEAR OR AFFIRM)

My name is Don Waldon (Black, DOB: 8/17/39). I am the Central Region District Director, Federal Protective Service, National Capital Region.

I did not discriminate against the complainant based on his race, color, age or reprisal for having been involved in prior EEO activity. Since I was not the proposing or deciding official with respect to the complainant's suspension from duty, I cannot address this allegation. I also was not involved in the complainant's allegedly being denied a deployment to New York. The reassignment of the complainant's vehicle during his suspension from duty was not an act of harassment or reprisal. It is the policy that if an assigned driver is to be off duty for a long period of time, the vehicle will be reassigned to another driver. The reason for this policy is that currently we have more officers than we have vehicles to assign. We cannot have a vehicle sitting in the parking lot unused for a long period of time. I was not aware of the type or age of the vehicle the



EXHIBIT
ROI-2
10

complainant was assigned prior to or after his suspension. I was not responsible for the assignment of

Page 1 of 2                                                                 Initial

his vehicles; that task is delegated to my subordinates. Currently, the complainant is driving a year 2003 vehicle. The complainant's gun was transferred to the armory while he was on suspension. This is standard procedure when an officer is off duty for an extended period of time. The complainant was not treated any differently than any other officers under the same set of circumstances.

I HAVE READ THE ABOVE STATEMENT, CONSISTING OF __2__ PAGES, AND IT IS TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE AND BELIEF. I UNDERSTAND THAT THE INFORMATION I HAVE GIVEN IS NOT TO BE CONSIDERED CONFIDENTIAL AND THAT IT MAY BE SHOWN TO THE INTERESTED PARTIES.

RESPONDENT'S SIGNATURE                         Date  5-21-03

INVESTIGATOR

# U.S. GENERAL SERVICES ADMINISTRATION
## Demiko Suggs

State Of _____Washington DC_____

County of _____

I, ~~West Mitchell~~ make the following statement freely and voluntarily to Robert Bradley who has identified himself to me as an EEO INVESTIGATOR for the United States General Services Administration knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to any interested party.

I HEREBY SOLEMNLY ___Swear_____ to the following:
                        (SWEAR OR AFFIRM)


My name is Demiko Suggs (African-American, Black, DOB: 11/20/76), Logistics Contractor. As a contractor I have no supervisory relationship with the complainant. I have not discriminated against the complainant because of his race, color or age. I have no knowledge of his prior EEO activity and have not subjected him to any form or reprisal. The only information I have relating to the subject complaint is the fact that after the complainant was scheduled off duty for a period of time he turned his vehicle in. I had no knowledge of why he was off duty. The vehicle was then reassigned to Officer Cartwright who was returning to duty after being on military leave. Officer Cartwright came to my office and gave me items he found in the vehicle belonging to Officer Short.

Page 1 of 2                                                    Initial  DS


EXHIBIT
ROI-2
11

He informed me that Officer Short would be looking for this equipment when he returned to duty. We placed the items in the cage area for safekeeping. When Officer Short returned to duty he came to my office looking for the items from his vehicle. I then took him to the cage and he retrieved the items. He stated some of the items were missing. He stated he would take the necessary action to get these items back. He took the items that were in the cage and left. I have no knowledge of what happened after he left.

I HAVE READ THE ABOVE STATEMENT, CONSISTING OF __2__ PAGES, AND IT IS TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE AND BELIEF. I UNDERSTAND THAT THE INFORMATION I HAVE GIVEN IS NOT TO BE CONSIDERED CONFIDENTIAL AND THAT IT MAY BE SHOWN TO THE INTERESTED PARTIES.

_Denita Snage_     5/23
RESPONDENT'S SIGNATURE     Date

_Bradley_
INVESTIGATOR

# U.S. GENERAL SERVICES ADMINISTRATION
## Kevin Williamson

State Of _____Washington DC_____

County of _____

I, Kevin Williamson make the following statement freely and voluntarily to Robert Bradley who has identified himself to me as an EEO INVESTIGATOR for the United States General Services Administration knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to any interested party.

I HEREBY SOLEMNLY _____ to the following:
                            (SWEAR OR AFFIRM)

My name is Kevin Williamson (Caucasian, White, DOB: 9/4/58), Field Training Officer and I have no supervisory relationship with the complainant. I have been with the Agency for about six and a half years. I have been in my current position for about half a year. I have no knowledge of the complainant's prior EEO activity. On Saturday June 8, 2002, I was the CDO, Duty Officer. On this date I was aware the complainant had been sent to handle a situation at the Reagan Building. A suspect was identified as having a gun. Lt. Thomas instructed the complainant to arrest the suspect. This was based on DC Law, which makes it illegal for any person other than law enforcement officials, to have a gun in the City limits. The officers did not make the arrest right away but instead contacted the Mega Center requesting wants and warrants check made of the individual

Page 1 of 3                                                    Initial _KW_

EXHIBIT
ROI-2
12

along with checking the gun to ensure it was not stolen. This check came back clean. Lt. Thomas stated he needed to talk with the complainant to re-advise him to ensure the subject was arrested. Lt. Thomas contacted complainant via telephone and repeated the order to arrest the man. Later the complainant called the office and advised me that he was not going to arrest the subject and that he was dismantling the weapon and taking the ammunition. I advised him that Lt. Thomas was adamant about the arrest because it was DC Law. DC Law does not allow anyone but law enforcement officers to have guns in the District of Columbia. Anyone found with a gun is to be arrested. The complainant told me he had notified the District Attorney and they told him he did not have to make the arrest. The complainant had failed to follow the instructions given to him by Lt. Thomas to arrest the suspect.

When the complainant returned to the office Lt. Thomas met with him away from the office to discuss the situation. The discussion became very heated. When they returned to the CDO's Office, Lt. Thomas leading the way. The complainant then mumbled something under his breath. Lt. Thomas asked him "Did you call me a dumb black Niger?" The complainant responded, "I said dumb black Niger." I do not recall all the circumstances elating to the complainant turning his assigned vehicle in when he started his suspension. When he returned I did assist him in trying to locate his supplies. He left the supplies in his vehicle and when he returned the vehicle was reassigned and he could not find his equipment. It is not unusual for cars to be reassigned when an officer was off for an extended period of time. There are more officers than cars available. I had no knowledge of which vehicle was assigned to the complainant when he returned to duty.

Page 2 of 3                                                                Initial _____

Yes his gun was placed in the gun range safe when he was on suspension. This also is normal procedure. When officers are off duty for an extended period of time the gun is placed in a safe for security reasons.

I HAVE READ THE ABOVE STATEMENT, CONSISTING OF __3__ PAGES, AND IT IS TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE AND BELIEF. I UNDERSTAND THAT THE INFORMATION I HAVE GIVEN IS NOT TO BE CONSIDERED CONFIDENTIAL AND THAT IT MAY BE SHOWN TO THE INTERESTED PARTIES.

_____   5/21/03
RESPONDENT'S SIGNATURE      Date

_____
INVESTIGATOR

# U.S. GENERAL SERVICES ADMINISTRATION
## CAPTAIN RICHARD ALLEN SIMMS

State Of _____Washington DC_____

County of _____

I, Richard Allen Simms make the following statement freely and voluntarily to Robert Bradley who has identified himself to me as an EEO INVESTIGATOR for the United States General Services Administration knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to any interested party.

I HEREBY SOLEMNLY ____AFFIRM_____ to the following:
(SWEAR OR AFFIRM)

My name is Richard Allen Simms (Black, Black, DOB: 9/20/42), Commander Third Shift. I am aware the complainant has been involved in prior EEO Activity however to my knowledge I was not involved in any of his allegations. Yes I did overhear a conversation between the complainant and Sgt. Sherrod. Doing this conversation I heard the complainant state he was not coming to work on June 29, 2002 or July 4, 2002. He made these statements after he had been made aware his leave had been disapproved for these days. Due to a planned demonstration and staff shortage.all leave had been cancelled.

I HAVE READ THE ABOVE STATEMENT, CONSISTING OF __2___PAGES, AND IT IS TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE AND BELIEF. I UNDERSTAND THAT THE INFORMATION I HAVE GIVEN IS NOT TO BE CONSIDERED CONFIDENTIAL AND THAT IT MAY BE SHOWN TO THE INTERESTED PARTIES.

_____[signature]_____                          _____May 20, 2003_____
RESPONDENT'S SIGNATURE                          Date

[signature: Ralt Bulk]

EXHIBIT
ROI-2
/3

# U.S. GENERAL SERVICES ADMINISTRATION
# Bryan R. Smith

State Of        Washington DC

County of


I, Bryan R. Smith make the following statement freely and voluntarily to Robert Bradley who has identified himself to me as an EEO INVESTIGATOR for the United States General Services Administration knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to any interested party.

I HEREBY SOLEMNLY ___ to the following:
                    (SWEAR OR AFFIRM)

My name is Bryan R. Smith (Caucasian, White, DOB: 6/4/72), Police Officer, GS-083-7, within the Federal Police Service Enforcement Division. I deny that I have ever discriminated against the complainant because of his race, color or age. I am not aware of the complainant's prior EEO activity and I have not subjected him to any form of reprisal. I was one of three officers that reported to an incident at the Ronald Reagan Building on June 8, 2002. We were responding to the fact a suspect was on the scene with gun. I do not recall Lt. Thomas stating the suspect needed to be arrested. Officer Short contacted the US Attorney's Office and explained the situation. He stated they instructed him to release the suspect. We then disassembled the gun and placed it in the car's trunk. The ammunition was turned over to Lt. Thomas for destruction. I did not


Page 1 of 2                                        Initial

agree with the decision made by the complainant to release the suspect but he was the

senior officer and the supervisor on the scene.



I HAVE READ THE ABOVE STATEMENT, CONSISTING OF __2__ PAGES, AND

IT IS TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE AND BELIEF.

EXHIBIT
RoJ-2
14

I UNDERSTAND THAT THE INFORMATION I HAVE GIVEN IS NOT TO BE CONSIDERED CONFIDENTIAL AND THAT IT MAY BE SHOWN TO THE INTERESTED PARTIES.

RESPONDENT'S SIGNATURE _____  Date 5/21/03

INVESTIGATOR Robert Bradley

**PRIVACY ANC NOTICE TO EEO COMPLAINT INTERVIEW WITNESS
(OTHER THAN COMPLAINANT)
FOR DISCRIMINATION COMPLAINT INVESTIGATIONS**

**GENERAL**

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

**AUTHORITY**