67. Employee alcoholism and drug abuse. Instructions for dealing with employee alcoholism and drug abuse are in the HB, Special Problems in Supervision, chap. 2 (OAD P 6050.1).

68 thru 78. Withdrawn by CHGE 20.

79 thru 85. Reserved.

## PART 7. RESERVED

(See GSA Order, GSA Standards of Conduct (ADM 7900.9).)

## PART 8. MAINTAINING DISCIPLINE

### SECTION 1. GENERAL



105. Principles. The maintenance of good group discipline in GSA and the handling of disciplinary actions, when required, are to be carried out under the following basic principles:

a. Primary emphasis is to be placed on positive action by supervisors to prevent situations requiring disciplinary actions.

b. Employees are expected to adhere to high standards of conduct. When they violate the rules, regulations, or standards of conduct, they will be dealt with promptly and adequately, on a fair and equitable basis.

c. Disciplinary action should be consistent with the principle of like penalties for like offenses, with due consideration for the employee's past record and any other circumstances that, in the exercise of reasonable judgement, detract from or add to the seriousness of the offense.

106. The positive meaning of discipline.

a. Good group discipline is more than compliance with regulations and standards of conduct; it implies an understanding of why the rules are necessary and confidence that they will be enforced fairly. Good group discipline means cooperation among the members of the group, and between the leader and the group. It acts as a positive force on the members of the group leading to a high degree of self-discipline or control which is self-motivated rather than imposed by higher authority. The extent to which it exists in a group is an indicator of the quality of supervision.

b. Since it is an intangible quality, good group discipline is not easily measured by any yardstick. It can best be described by reference to those employee attitudes which characteristically accompany and foster its development. When the following factors are present, group discipline of a high order will prevail:

(1) An understanding of and interest in the organization's activities including a clear understanding of how individual performance requirements fit into the overall work program.

(2) A sense of pride in the accomplishments of the group.

(3) Teamwork, or the willingness to contribute in ways that reflect credit on the group as a whole.

Atch 7 2

(4) Free communications upward and downward.

(5) Freedom to express opinions and suggestions, with the assurance that they will receive

(6) A reasonable sense of security in employment.

(7) Knowledge that each individual's contribution is regarded as significant and is fairly appraised on its merits.

(8) Confidence in the consideration, understanding, and integrity of supervisors.

c. The one essential ingredient for good group discipline is effective leadership starting from the top and working down. Positive supervisory practices pursued on a continuing day-to-day basis are needed to develop in employees an attitude toward their work which motivates them to observe correct habits of conduct. The constructive influence of a good example is as effective in this as in any other learning experience.

107. The purposes of disciplinary actions.

a. Individual disciplinary actions sometimes become necessary even in the best managed groups. The way the supervisor deals with each case will have an effect, positively or negatively, on general group discipline. The procedures and general instructions in this part will furnish guidance to supervisors in carrying out their responsibilities for taking disciplinary action. They do not substitute for constant vigilance to prevent the occurrence of infractions, for careful judgement in the application of penalties, or for followup action to evaluate the effectiveness of the measures taken.

b. The purposes of disciplinary action are to prevent the recurrence of misconduct, to improve the employee's attitude and behavior, and to maintain discipline and morale among other employees. Every disciplinary action should be weighed with these objectives in mind. Where there is confidence that these purposes can be accomplished through counseling or verbal admonishment, formal disciplinary action should not be taken.

108. Responsibility for maintaining discipline.

a. Heads of Services and Staff Offices in the Central Office and Regional Administrators in the field are responsible for the maintenance of discipline and adherence to the standards of conduct by officials and employees under their jurisdiction.

b. Immediate supervisors, in all instances, have the primary responsibility for acquainting employees with the standards of conduct, maintaining discipline and morale, and initiating appropriate corrective action when it becomes necessary. This is a daily responsibility of supervisors and not merely action taken at times when the employee may deviate from acceptable forms of conduct. Supervisors must thoroughly understand the purposes of disciplinary action and the methods for taking proper corrective action.

109. Authority to take disciplinary action.

a. Heads of Services and Staff Offices in the Central office and Regional Administrators in the field may designate the officials who are authorized to take disciplinary action. Designated officials must be in line of authority over the disciplined employee. In the absence of other designation or limitation, any

supervisor may issue warning notices, any official at the level of branch chief or facility manager may issue official reprimands, and any official at the division director or higher level may propose and decide adverse actions (i.e. suspensions, furloughs without pay of 30 days or less, reductions in grade or pay, or removals).

b. Any notice of proposed adverse action or final letter of decision to take adverse action requires the prior concurrence of the servicing Personnel Officer, regarding the appropriateness of the action under the regulations pertaining thereto.

c. Personnel Officers are responsible for obtaining appropriate legal review.

## SECTION 2. DEFINITIONS OF PENALTIES

110. <u>Nondisciplinary letters of instruction or counseling</u>.

a. A letter of instruction or counseling is an informal notification from a supervisor calling an employee's attention to the need to improve in areas such as conduct, performance or attendance. For example, a supervisor might address a letter to an employee regarding the amount of sick leave or emergency annual leave used (which, though approved, appears excessive) or the need to pay closer attention to verbal instructions. Whether issued orally or in writing, such reminders are a regular part of daily supervision and are not considered penalty actions.

b. Copies of letters of instruction or counseling are maintained by the supervisor and are not filed in the employee's official Personnel Folder. Such letters may not be cited as previous disciplinary offenses for determining whether a second or third offense has occurred in determining a penalty. They may, however, have significance as supporting documents if formal discipline becomes necessary later-- showing, for example, that an employee was fully aware of the nature of the misconduct.

111. <u>Warning notices</u>.

a. A warning notice is a letter of reproval calling an employee's attention to an infraction (ordinarily a first offense not too serious in nature) and warning the employee of the consequences of a repetition of misconduct. In addition, each warning notice will inform the employee that:

(1) A copy of the warning notice will be placed in the employee's official personnel folder;

(2) The employee may submit a written statement or explanation to be included the personnel folder;

(3) The warning notice will be withdrawn from the personnel folder after 1 year; and

(4) The employee may use the GSA grievance procedure to contest the propriety of the action, or if issuance of the warning notice is subject to provisions of a labor- management contract, he or she may use the negotiated grievance procedure. It is the responsibility of the issuing office to ascertain which procedure is appropriate.

b. A warning notice will be withdrawn from the official personnel folder after a maximum of 1 year. At the discretion of the issuing officer, it may be withdrawn earlier. In determining whether a notice should be withdrawn in less than a year, the supervisor will consider the employee's conduct, performance, and general attitude toward the job subsequent to the issuance of the warning. The employee will be notified in writing when a warning notice is withdrawn in less than 1 year after the date of issuance. The knowledge that the notice may be withdrawn should provide the employee with a strong incentive to

observe the rules of conduct. When a warning notice is withdrawn, the offense may not be cited as a previous offense to support a determination that a second or third offense has occurred in the event of future misconduct. It may, however, be used to demonstrate that the employee understood that the conduct involved was proscribed or has failed to respond to repeated counseling, in the same manner as a letter of counseling supports a formal "first offense" disciplinary action.

c. The suggested format to be followed in preparing a warning notice is shown in figure 3-111.

112. Official reprimands.

a. A reprimand is a formal notice of official censure for a serious violation of a rule of conduct, law or regulation, official instruction, or specified responsibility. It also may be given for repetition of an infraction for which the employee has previously been warned, or it may be given at the point where an accumulation of two or more different offenses call for more serious action than a warning. A copy of each reprimand is filed in the official personnel folder as a temporary record, and is withdrawn after a maximum of 3 years. At the discretion of the issuing officer, it may be withdrawn earlier, in which event, the employee should be notified in writing. When a reprimand is withdrawn, the same considerations concerning use in future disciplinary action as are described for warning notices in par. 111b, above, apply.

b. The notice of reprimand will explain the reasons for issuance specifically and in detail, and will warn the employee of the serious consequences of future violations. In addition, each notice of reprimand will inform the employee that:

(1) A copy of the official reprimand will be placed in the employee's official personnel-folder;

(2) The reprimand will be withdrawn from the personnel folder after 3 years;

(3) The employee may submit a written statement or explanation to be included in the personnel folder at any time; and

(4) The employee may use the GSA grievance procedure (or negotiated grievance procedure) to contest the propriety of the penalty.

c. Whenever it is believed that a reprimand will sufficiently impress upon an employee the seriousness of a violation and adequately serve as a corrective measure, it is to be preferred to suspension.

d. The suggested format to be followed in preparing an official reprimand is shown in figure 3-112.

113. Suspensions.

a. A suspension is the placement of an employee in a temporary non-duty, non-pay status for disciplinary reasons. It may be recommended as a penalty action for a serious first offense, for repetition of a less serious offense for which the employee has previously been given a lesser penalty, or when more than one offense has occurred each of which, standing alone, might not warrant a suspension.

b. The effectiveness of suspension as a penalty action should be carefully considered in each individual case. The loss of the employee's services for the time covered by the suspension is, to some extent, a penalty on the agency and on other employees who must assume the duties of the offender during his absence. Loss of pay for several days may mean serious hardship for the employee's family or may result in indebtedness which could have an adverse rather than a beneficial effect on the future conduct

record of the individual. Since a suspension is usually a matter of common knowledge, it can be expected that in some instances an employee's ability to do an effective job may be impaired, depending on the demands of the position he holds. Therefore, this penalty should normally be imposed only after counseling or written warning notices or official reprimands have proven ineffective, or when the offense is so serious as to indicate that more stringent corrective action is necessary.

c. There are, however, instances in which suspension is an appropriate penalty action. If the offense is of such a serious nature that removal is considered, but because of extenuating circumstances it is decided to retain the employee in the service, suspension may be the only penalty appropriate to reflect the degree of agency disapproval. Or, in instances in which it is believed that drastic action is necessary to secure adherence to required standards, a suspension may be effective where counseling, warnings, and reprimands have failed.

d. No suggested format is provided for notices of proposed suspensions or of decisions on suspensions. Servicing personnel offices should always be consulted before such notices are written.

114.Removals.

a. Removal is a drastic penalty which may be imposed only for repeated violations or offenses, or for one or more offenses involving serious misconduct or delinquency. Since removal on charges of misconduct can be expected to make it difficult or even impossible for the employee to continue his Government career in another agency, the step should be taken only after careful weighing of the evidence and a determination that such action is necessary to promote the efficiency of the service

b. Supervisors should be mindful of two obligations. Their obligation to the Government demands that standards be upheld and that employees who deliberately violate the standards be removed. By law, action must not be arbitrary or unreasonable, and must in every case be adequately supported by a preponderance of the evidence.

c. On occasion, demotion to a lower grade position may be taken as a penalty action in lieu of removal or as an appropriate response to a given situation in its own right. For example, demotion from a supervisory to a nonsupervisory position could be a reasonable penalty where the misconduct is related to supervisory duties but the record evidences that without those responsibilities the individual would be a productive employee. Whenever demotion is considered as a penalty action, the determination should be based on what is believed to be a reasonable expectation of attitude and conduct in the lower grade position. The nature of the misconduct and the type of individual concerned will affect the decision.

d. Frequently, employees prefer to resign rather than to face removal charges. This outcome is desirable from the standpoint of economy, and a resignation should be accepted under such circumstances. A resignation should never be obtained under duress or demanded as an alternative to some other action to be taken, but it is perfectly acceptable to present the employee with the hard choice of resignation or potential removal. If an employee resigns after receiving a removal proposal, the regulations of the Office of Personnel Management require that the Standard Form 50, Notification of Personnel Action, show under "Remarks" that the employee resigned while action was pending to separate him, giving the reasons. The employee should be informed that the information regarding his misconduct has become a matter of permanent record. Note: resignations effected under a formal settlement of an appeal of disciplinary action may or may not include remarks as specified in the settlement agreement.

e. No suggested format is provided for notices of proposed removal or of decisions on removals. Servicing personnel offices should always be consulted before such notices are written.

## SECTION 3. PROCEDURES FOR TAKING DISCIPLINARY ACTION

115. <u>General cautions</u>.

a. Disciplinary actions are complex matters which should be undertaken only with the advice and assistance of the appropriate personnel office. Supervisors should seek personnel advice at the first sign of conduct problems (or poor performance) before the problems have become severe. In most cases, if appropriate corrective steps are taken early, conduct and performance can be improved and formal action will be unnecessary.

b. Note that regional issuances may supplement the procedures of this section. In addition, labor agreements frequently specify detailed procedures governing disciplinary actions for bargaining unit employees which, again, calls for early personnel advice.

116. <u>Timing of the action</u>.

a. Supervisors should not store up criticisms but should discuss any perceived problems with employees as soon as such problems arise. When the circumstances call for disciplinary action, it should be taken promptly and deliberately. Delay in taking disciplinary action tends to diminish its effectiveness.

b. The setting of maximum time limits for most actions is not practicable because of the many variables that can affect timing even with high priority attention.

c. When a report of investigation is received from the Office of Inspector General, it should receive especially high priority attention. (See also par. 118, below.)

e. See par. 119 below concerning violations involving information security.

117. <u>Inquiry to determine the facts</u>.

a. In the instance of suspected irregularities involving fraud against the Government, wrongdoing that might be punishable as a criminal offense, or any type of misconduct as outlined in Table IT of the Penalty Guide (Figure 3-120.2) supervisors should not initiate their own inquiries but must report the matter immediately to the office of Inspector General (OIG) or to the local Field Investigations office with a request for OIG investigation or authorization to proceed with administrative action. Should the Office of Inspector General determine that the irregularity does not warrant conducting an official investigation, the appropriate GSA official should conduct an inquiry as outlined in this section to determine the nature and extent of administrative action to be taken.

b. Figure 3-120.1, Penalty Guide, Table 1, lists offenses which will normally be the subject of inquiry and report by an appropriate supervisor. In any instance, however, if the offense is of a serious nature that may lead to removal and if facts cannot be adequately ascertained by the supervisor, a request may be made through channels for initial or supplemental investigation by the OIG.

c. The following steps are recommended to guide the supervisor in conducting an inquiry to secure the facts needed to determine what disciplinary action, if any, is warranted:

(1) Interview the employee who has allegedly committed an offense.

(2) Interview witnesses and any others who can provide pertinent information.

(3) Try to reconcile any conflicting statements or other evidence. Reinterview the parties concerned if appropriate.

d. If, in the supervisor's opinion, the facts revealed by the inquiry are serious enough to warrant official action involving concurrence at a higher level, the supervisor must prepare a written report. GSA Form 225, Record of Infraction, or a similar fact gathering record is recommended for this purpose.

e. The instructions in pars. b and c above, regarding conducting and reporting an inquiry to determine the facts, do not apply to cases where sufficient evidence to provide a proper basis for disciplinary action is available from some other official source, such as a report of an investigation conducted by the OIG, a police or court record, or a finding by the Office of Personnel Management that an employee has falsified his/her application for employment or other personal history record.

118. <u>Acting on reports from the office of Inspector General and on positive drug test results from the Medical Review Officer (MRO)</u>. Investigation reports from the OIG and positive drug test results from the MRO are sent to regional administrators and heads of services and staff offices. It is recommended that such reports be referred for action at a relatively high level (division director or above). Since these reports frequently involve sensitive issues subject to close scrutiny both within and outside of the agency, managers to whom they are referred should always consult with the appropriate personnel and legal officials before proceeding to prepare disciplinary proposals or take other action.

119. <u>Security violations</u>. All potential security violations must be reported immediately to the appropriate security manager who is responsible for conducting a preliminary inquiry and notifying the GSA Security Officer. Refer to chapter 10 of the HB, Information Security (ADM P 1025.2C) for detailed instructions concerning investigation of security violations and applicable time limits for related administrative actions.

120. <u>Penalty Guide</u>.

a. Figures 3-120.1 and 3-120.2, Penalty Guide, Tables I and II, list offenses together with range of penalties for first, second, and third offenses. Penalties for offenses not listed should be determined by reference to the penalties listed for offenses of a similar type or of comparable seriousness. Offenses listed in Table I are normally investigated by line supervisors, while offenses listed in Table II must be referred to the OIG (see par. 111e, above).

b. In determining which penalty is most appropriate, within the range provided by the guide, a variety of considerations relevant to the circumstances of the individual case will be taken into account. Listed below are a number of factors that are generally recognized as relevant to penalty selection. Not all of these factors will be pertinent in every case. Some of the factors may weigh in the employee's favor, while others may not or may even constitute aggravating circumstances. Selection of an appropriate penalty involves a responsible balancing of the relevant factors in the individual case.

(1) The nature and seriousness of the offense, and its relation to the employee's position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated.

(2) The employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public and prominence of the position.

(3) The employee's past disciplinary record.

(4) The employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability.

(5) The effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties.

(6) The consistency of the penalty with those imposed upon other employees for the same or similar offenses.

(7) The consistency of the penalty with the Penalty Guide.

(8) The notoriety of the offense or its impact upon the reputation of the agency.

(9) The clarity with which the employee was put on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question.

(10) The potential for the employed's rehabilitation.

(11) Any mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith? Malice or provocation on the part of others involved in the matter.

(12) The adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.

c. Penalties will generally conform to the guide, since the range of penalties provides latitude for the exercise of judgement. In unusual circumstances, however, a greater or lesser penalty than that provided by the guide may be imposed to meet the purposes of disciplinary actions, except where the guide indicates that the penalty is specified by law. For example, the rules and case law governing "reasonable accommodation" might counsel reducing the penalty or foregoing discipline altogether while an employee pursues treatment for a handicapping condition that directly influenced the misconduct at issue.

d. In determining that a second or third offense has occurred, only disciplinary actions taken within the past three years may be considered. Earlier offenses, however, may demonstrate that the employee was fully aware of the nature of the misconduct and could support selection of a relatively high penalty within in the range provided by the guide.

e. When the past record involves an offense or offenses unrelated to the current offense, or when two or more offenses are being considered for disciplinary action at the same time, a greater penalty than would be imposed for a first offense may be appropriate., In these cases, the severity of the penalty should take into account the total pattern of behavior. It should also be noted that the penalty guide does not require a progression through all possible disciplinary actions prior to removal.

f. Where appropriate, demotion may be used in place of removal.

121. Relationship between disciplinary actions and actions for unacceptable performance. Suspensions, demotions and removals or misconduct, are generally taken under the adverse action procedures in 5 CFR Part 752. Under the Civil Service Reform Act of 1978, however, alternate procedures were specifically established in 5 CFR Part 432 to lessen the burden of proof in cases based on unsatisfactory performance. Part 432 procedures can be used when an action is based solely on unacceptable

http://w3.gsa.gov/web/c/gsad.nsf/d918e928855e021285255f...

performance in one or more critical elements. The adverse action procedures in 5 CFR Part 752 can also be used for performance related demotions or removals. But, since Part 752 actions require a greater degree of proof than Part 432 actions, they are generally used in performance cases only where poor performance is mixed with misconduct or other problems not clearly falling under the category of unacceptable performance in one or more critical elements. Supervisors should work particularly closely with their employee and labor relations staff when confronting situations involving both performance problems and misconduct.

122. Further considerations when processing disciplinary actions.

a. The Office of Personnel Management has issued Governmentwide regulations governing the processing of both Part 432 and Part 752 actions. Because the regulations are complex and detailed, specific agencywide procedures for processing such actions are not necessary. (See the GSA Performance Management Handbook, OAD P 9430.1, Ch. 2-14, for a general description of Part 432 procedures). It should be noted that the procedural requirements of the Competitive Service are not always applicable to Excepted Service or temporary employees. The Office of Personnel and General Counsel must always be consulted when considering suspensions, demotions, or removals.

b. As noted in Par. 115b, above, in addition to OPM's regulations, regional issuances and labor agreements may detail
procedures that are applicable to disciplinary actions that go beyond those specified in this directive.

123 thru 126. Reserved.

## PART 9. GRIEVANCES

127. GSA grievance procedures handbook. The HB, GSA Grievance Procedures (OHR P 9771.1), describes the procedures that may be used by employees to obtain higher level consideration of requests for personal relief in matters of concern or dissatisfaction that are subject to the control of agency management.
128 thru 129. Reserved.

## PART 10. CIVIL RIGHTS IN GSA

130. General. Every aspect of the General Services Administration's (GSA) internal and external programs, services, and activities is planned, developed, implemented, and maintained in accordance with the Civil Rights Act of 1964, as amended, and other pertinent laws, policies, rules, and regulations. Discrimination is neither tolerated nor condoned. Nondiscrimination is not enough. Managers, supervisors, and other employees are expected vigorously to pursue efforts to eliminate the present effects of past discrimination against individuals because of race, color, religion, sex, national origin, age, or physical or mental handicap.

131. GSA civil rights handbook. The procedures for administering the civil rights program in GSA are contained in the HB, Civil Rights (ADM P 2300.1).

132 thru 137. Reserved.

## PART 11. LABOR-MANAGEMENT RELATIONS IN GSA

138. Labor-management relations handbook. The GSA labor management relations practices and procedures are prescribed in the HB, Labor-Management Relations in GSA (OAD P 6250. 1).