| GENERAL SERVICES ADMINISTRATION | | See Instructions on reverse |
|---|---|---|
| **RECORD OF INFRACTION** | | |

| NAME OF EMPLOYEE | TITLE | GRADE |
|---|---|---|
| GEORGE A. SHORT | LEAD POLICE OFFICER | GS-09 |

| ORGANIZATION | LOCATION |
|---|---|
| FEDERAL PROTECTIVE SERVICE | POLICE BUREAU, S.E.FED. CENTER BLDG. 74 WASH DC |

**1. SUPERVISOR'S REPORT**

ON SATURDAY JUNE 8, 2002, CPL. GEORGE A. SHORT WAS ASSIGNED TO DUTY AS AN ACTING SUPERVISOR FROM 3PM-11PM. CPL. SHORT REPORTED FOR DUTY AS SCHEDULED

ON SATURDAY JUNE 8, 2002, AT APPROXIMATELY 1535 CPL. SHORT WAS INFORMED WHILE IN THE ROLL CALL ROOM OF BLDG. 74, VIA THE MEGA CENTER, THAT THERE WAS A REPORT OF A MAN WITH A GUN, WHO WAS LOCATED AT THE RONALD REAGAN BUILDING, 1300 PA AVE. NW. CPL. SHORT INSTRUCTED OFC. JOSE AZARCON AND OFC. BRYAN SMITH TO RESPOND TO THE LOCATION. A SHORT TIME AFTER CPL. SHORT INSTRUCTED OFC. SMITH AND AZARCON TO RESPOND, CPL. SHORT INFORMED LT. REGINALD L. THOMAS ,ACTING WATCH COMMANDER OF 2ND SHIFT 3PM-11PM THAT HE WAS RESPONDING TO THE REAGAN BUILDING.

CPL. SHORT RESPONDED AND SHORTLY AFTER ARRIVING TO THE REAGAN BLDG. CPL. SHORT BRIEFED LT. THOMAS AS TO THE SITUATION. LT. THOMAS DECIDED AFTER HEARING THE FACTS FROM CPL. SHORT INSTRUCTED CPL SHORT, TO CHARGE THE SUSPECT AND BRING HIM TO BLDG. 74. THESE INSTRUCTIONS WERE GIVEN TO CPL. SHORT AT LEAST 3 DIFFERENT TIMES AND CPL. SHORT WAS ASKED BY LT. THOMAS IF HE HAD A PROBLEM WITH THE INSTRUCTIONS AND CPL. SHORT REPLIED THAT HE DID NOT. AT APPROX. 5:55PM.LT. THOMAS LEARNED FROM OFF. KEVIN WILLIAMSON THAT CPL. SHORT HAD LET THE SUSPECT

| SUPERVISOR (Signature) | TITLE | DATE |
|---|---|---|
| REGINALD L. THOMAS | LIEUTENANT | 06-10-2002 |

**2. EMPLOYEE'S STATEMENT - I HAVE READ THE ABOVE REPORT AND MAKE THE FOLLOWING COMMENT:**

No Statement At This Time

| EMPLOYEE (Signature) | DATE |
|---|---|
| Cpl. George A. Short | 6-26-02 |

**3. PREVIOUS INFRACTIONS (Nature of offense, penalty action taken, and date of penalty action)**

NONE

**4. ACTION TAKEN OR RECOMMENDED (Give reasons for any deviations from Penalty Guide)**

suspension for 30 days

| SUPERVISOR (Signature) | TITLE | DATE |
|---|---|---|
| Reginald R. Thomas | Lieutenant | 7/2/02 |

**5. ACTION TAKEN OR RECOMMENDED (Include any appropriate comments)**

I concur with Lt. Thomas's recommendation.

| SUPERVISOR (Signature) | TITLE | DATE |
|---|---|---|
| [signature] | Captain | 7/9/02 |

EXHIBIT
ROI-2
53

ROI-2 Ex 3 Page

GSA FORM

| GENERAL SERVICES ADMINISTRATION | See INSTRUCTIONS on reverse |
|---|---|
| **RECORD OF INFRACTION** | |

| NAME OF EMPLOYEE | TITLE | GRADE |
|---|---|---|
| GEORGE A. SHORT | LEAD POLICE OFFICER | GS-09 |

| ORGANIZATION | LOCATION |
|---|---|
| FEDERAL PROTECTIVE SERVICE | POLICE BUREAU, S.E.FED. CENTER BLDG. 74 WASH DC |

**1. SUPERVISOR'S REPORT**

ON SATURDAY JUNE 8, 2002, CPL. GEORGE A. SHORT WAS ASSIGNED TO DUTY AS AN ACTING SUPERVISOR FROM 3PM-11PM. CPL. SHORT REPORTED FOR DUTY AS SCHEDULED.

ON SATURDAY JUNE 8, 2002, AT APPROXIMATELY 1535 CPL. SHORT WAS INFORMED WHILE IN THE ROLL CALL ROOM OF BLDG. 74, VIA THE MEGA CENTER, THAT THERE WAS A REPORT OF A MAN WITH A GUN, WHO WAS LOCATED AT THE RONALD REAGAN BUILDING, 1300 PA AVE. NW. CPL. SHORT INSTRUCTED OFC. JOSE AZARCON AND OFC. BRYAN SMITH TO RESPOND TO THE LOCATION. A SHORT TIME AFTER CPL. SHORT INSTRUCTED OFC. SMITH AND AZARCON TO RESPOND, CPL. SHORT INFORMED LT. REGINALD L. THOMAS, ACTING WATCH COMMANDER OF 2ND SHIFT 3PM-11PM THAT HE WAS RESPONDING TO THE REAGAN BUILDING.

CPL. SHORT RESPONDED AND SHORTLY AFTER ARRIVING TO THE REAGAN BLDG. CPL. SHORT BRIEFED LT. THOMAS AS TO THE SITUATION. LT. THOMAS DECIDED AFTER HEARING THE FACTS FROM CPL. SHORT INSTRUCTED CPL SHORT, TO CHARGE THE SUSPECT AND BRING HIM TO BLDG. 74. THESE INSTRUCTIONS WERE GIVEN TO CPL. SHORT AT LEAST 3 DIFFERENT TIMES AND CPL. SHORT WAS ASKED BY LT. THOMAS IF HE HAD A PROBLEM WITH THE INSTRUCTIONS AND CPL. SHORT REPLIED THAT HE DID NOT. AT APPROX. 5:55PM. LT. THOMAS LEARNED FROM OFF. KEVIN WILLIAMSON THAT CPL. SHORT HAD LET THE SUSPECT

| SUPERVISOR (Signature) | TITLE | DATE |
|---|---|---|
| REGINALD L. THOMAS  *(signed)* | LIEUTENANT | 06-10-2002 |

**2. EMPLOYEE'S STATEMENT** - I HAVE READ THE ABOVE REPORT AND MAKE THE FOLLOWING COMMENT:

| EMPLOYEE (Signature) | DATE |
|---|---|

**3. PREVIOUS INFRACTIONS** (nature of offense, penalty action taken, and date of penalty action)

**4. ACTION TAKEN OR RECOMMENDED** (Give reasons for any deviations from Penalty Guide)

| SUPERVISOR (Signature) | TITLE | DATE |
|---|---|---|

**5. ACTION TAKEN OR RECOMMENDED** (Include any appropriate comments)

| SUPERVISOR (Signature) | TITLE | DATE |
|---|---|---|

ROI-2 Ex 33 Page 2

GSA FORM 225 JUN 62

RECORD OF INFRACTION: CONTINUATION    GEORGE A. SHORT GS-09

LEAVE AND RETURNED TO HIM THE UNREGISTERED HANDGUN. REMOVING ONLY THE AMMONITION FROM THE WEAPON..

CPL. SHORT WAS IMMEDIATELY SUMMONED TO THE OFFICE TO TALK TO LT. THOMAS. ABOUT HIS DECISION TO RELEASE THE SUSPECT AND RETURN THE HANDGUN BACK TO THE SUSPECT.(WHILE IN PRIVATE)

CPL. SHORT RESPONDED TO THE ENFORCEMENT HEADQUARTERS AND MET WITH LIEUTENANT REGINALD L. THOMAS. WHEREAS CPL. SHORT WAS QUESTIONED BY LT. THOMAS AS TO HIS REASON FOR RELEASING THE SUSPECT AND RETURN TO HIM THE HANDGUN

CPL. SHORT EXPLAINED HIS DECISION TO RELEASE THE SUSPECT AND RETURN THE HANDGUN BACK TO HIM. TO LT.. THOMAS. WHO LET CPL. SHORT KNOW THAT HIS DECISION WAS IMPROPER AND WRONG AND ASKED CPL SHORT WHY HE DID NOT FOLLOW THE INSTRUCTION THAT WAS GIVEN TO HIM BY LT. THOMAS. CPL. SHORT COULD NOT PROVIDE A LOGICAL REASON WHY HE RELEASED THE SUSPECT AND RETURNED THE HANDGUN BACK TO THE SUSPECT

CPL. SHORT LEFT THE PRIVACY AREA AND WENT TO THE CDO OFFICE WHERE OFFICER KEVIN WILLIAMSON WAS PRESENT AND WITHOUT PROVOCATION BEGAN TO BERATE LT. THOMAS STATING " LIEUTENANT THE PROBLEM WITH THESE DUMB BLACK NIGGERS" AT THIS POINT I STOPPED CPL. SHORT AND ASKED HIM DIRECT IF HE WAS REFERRING TO ME AS A DUMB BLACK NIGGER AND CPL. SHORT REPLIED " THAT RIGHT. LT. THAT'S WHAT I SAID THESE DUMB BLACK NIGGER THINK THEY KNOW EVERYTHING.
CPL. SHORT CONTINUED TO BERATE LT. THOMAS. SAYING THAT'S WHY THERE IS SO MANY PROBLEMS WITH YOU AND THAT'S WHY EVERYONE ELSE HAVE A PROBLEM WITH YOU.AND WHY NONE OF THE OTHER OFFICERS LIKE YOU

CPL. SHORT, BY YOUR ACTION ON SATURDAY JUNE 8. 2002. YOU ARE THEREFORE CHARGED WITH SEVERAL INFRACTION OF THE STANDARD OF CONDUCT. TO WIT.
1  DELIBERATE REFUSAL TO COMPLY WITH AUTHORIZED INSTRUCTIONS ISSUED BY A SUPERVISOR. DISRESPECT. INSOLENT AND LIKE BEHAVIOR

2. DISORDELY CONDUCT: USE OF ABUSIVE OR OFFENSIVE LANGUAGE (3) NEGLECT OF DUTY- FAILURE TO CARRY OUT INSTRUCTIONS WHERE SAFETY OF PERSON OR PROPERTY IS ENDANGERED

| REGINALD L. THOMAS | LIEUTENANT | 6/10/02 |
|---|---|---|
| *Reginald Thomas* (signature) | | |

## INSTRUCTIONS

The immediate supervisor is normally the one responsible for initiating corrective action when an employee under his supervision violates regulations or GSA Standards of Conduct. This form is for use in reporting violations under Table 1 of the Penalty Guide, according to the instructions in the GSA Administrative Manual 3-111.

The supervisor should make a thorough and careful inquiry into the facts, interviewing the employee and any witnesses who have firsthand information. He should make every effort to reconcile conflicting statements and to get the whole story before filling out this form and making any judgment.

1. WHAT TO REPORT - State the facts simply and in logical order. All persons, places, dates and records referred to should be fully identified. If more space is required attach a sheet of paper to the form.

2. GETTING THE EMPLOYEE'S STATEMENT - The supervisor should ask the employee to read the report in block 1 and furnish his comments and signature. The employee may admit, deny, or explain the alleged infraction. If he admits the offense as reported, statement of witnesses need not be obtained. If witnesses' statements are secured, they should be attached to this form.

3. RECORDING PREVIOUS INFRACTIONS - The employee's previous record will be used in applying the Penalty Guide and in considering any deviation from the Guide. Only those Table 1 offenses for which penalty action was imposed within the last three years will be listed. Table II offenses will be listed without regard to the date they occurred.

4. ACTION BY THE SUPERVISOR - The supervisor who fills out this block may be the same one who filled out the report in block 1, or may be a supervisor at a higher level. He should consult the Penalty Guide and carefully weigh all the facts revealed by the inquiry, as well as the employee's statement in block 2. If he decides that no penalty action is warranted, he will so advise the employee and destroy this form. If he decides on either a warning notice or an official reprimand and is authorized to take such penalty action, he should note the fact in this block and issue the appropriate notice to the employee. A copy of the notice to the employee, together with the original of this form and any additional statement of comment or explanation received from the employee within 10 days, will be forwarded to the Personnel Division for the employee's official personnel folder. If the supervisor decides on a penalty action which he is not authorized to take, he will make his recommendation in this block and forward the form through channels for action.

5. ACTION BY HIGHER LEVEL SUPERVISOR - This block is provided for action by a higher level supervisor, as needed. The instructions in 4, above, also apply here. If an adverse personnel action is believed warranted, i. e., suspension, demotion, or removal, the form will be forwarded to the Personnel Division for action.

6. NOTIFICATION TO EMPLOYEE - The employee must be advised of the final decision with respect to any infraction written up on this form.

I <u>GEORGE A. SHORT</u> request <u>  2  </u> days to
   Name of PO                 Number

prepare a reply to the charges presented to me on  <u>6/18/02</u>
                                                              date

by <u>LT. REGINALD L. THOMAS</u>
    Name of Supervisor

PO's Signature _____

Supervisor's Signature _REGINALD L. THOMAS_ _[signature]_

**Corporal George Short**

**What was the nature and seriousness of the offense, and its relation to the employee's duties, position and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated?**

The charge of failure to follow instructions appears deliberate and intentional since Lieutenant Thomas told him three times to charge the suspect. Obviously he understood the instructions as Lieutenant Thomas asked him if he had a problem with the instructions and he relied that he did not.

The charge of disorderly conduct was particularly troubling in view of the agency policy on harassment, which discusses the usage of inappropriate language. The agency policy is very clear on this subject as well as Section 14.2.9 of FPS General Order 14 and Mr. Jordan's letter of April 25, 2000 about harassment, which was addressed to all employees in the police bureau. Also considered was the fact that Corporal Short, a leader, spoke this offensive insult in front of Officer Williamson.

Concerning the AWOL charges, I considered that on two occasions when he was denied leave that he stated that he would not be in on the days in which he was denied leave. On one of those days he called in citing an emergency and on the other day he claimed illness.

**Employee's past work record, length of service, performance on the job.**

The employee is an average employee with almost 38 years of service. This too is troubling in that as a long time employee he should be more than aware of the basics of following instructions issued by a supervisor.

**What is the effect upon supervisory confidence in the employee? Consistency of penalty?**

At this point supervisory confidence is somewhat lacking in that this is not just one offense but three serious offenses. How can he successfully lead if he cannot successfully follow?

Penalty appears appropriate and within the guide considering the three offenses.

**Mitigating circumstances?**

I am not aware of any mitigating circumstances.

*Don Waldon*
8-9-02

ROI-2 Ex 33 Page 6

6/20/02

To:    Lt. Thomas
FROM:  Ofc. Kevin P. Williamson

SUBJ:  WEAPONS INCIDENT AT RONALD REAGAN BUILDING ON 6/8/02

1. On 6/8/02 I was assigned to work the CDO's office for the day. At approximately 1530 hours the Mega Center notified me that the Ronald Reagan security office had notified them that they had a man, with a gun in the trunk of his vehicle, attempting to enter the garage and needed FPS Officers to respond. I entered roll call and advised Lt. Thomas and the Officers working that day of the incident and Lt. Thomas assigned Ofc. Azarcon and Ofc B. Smith to respond.

2. Minutes later Lt. Thomas entered the CDO's office and told me that he sent Cpl. Short down to supervise the arrest. The Officers did not make the arrest right away but instead contacted the Mega Center requesting wants and warrants check made of the individual along with checking the gun to ensure it was not stolen. Lt. Thomas stated that he needed to talk with Cpl. Short to readvise him to ensure the subject was arrested. Lt Thomas contacted Cpl. Short on his nextel and told him that. Lt. Thomas also called Ofc Azarcon and advised him that the subject MUST be arrested. Lt. Thomas left the Office and I called Ofc. Azarcon back on his nextel and told him he had to arrest the subject that it was DC LAW and he advised me to send a transport vehicle. Ofc Shanley was notified and returned to Bldg. #74 and proceeded to take a cage vehicle to the scene.

3. Several minutes after Ofc. Shanley left the Office Cpl. Short called the CDO's Office and advised me that he was not going to arrest the subject and that he was dismantling the weapon and taking the ammunition. I advised him that the LT. was adamant about the arrest because it was DC LAW! Cpl. Short told me that he had notified the District Attorney and they had told him he did not have to make the arrest. Moments later one of the investigators called the CDO's Office and asked me if the subject had been transported to bldg. #74 yet. I notified him of what Cpl. Short had told me and he sounded upset. He got even more upset when I told him that Cpl. Short gave the subject back his weapon. Moments after that call a second investigator called the Office and asked to speak to Lt. Thomas. After their conversation Lt. Thomas asked me to call Cpl. Short into the Office so he could speak to him.

4. Cpl Short arrived and Lt. Thomas took him away from the Office. When they returned to the CDO's Office, Lt. Thomas leading the way, Cpl. Short mumbled something under his breath when Lt Thomas asked him "Did you call me a dumb black Niger?" Cpl. Short looked up and said, "I said dumb black Niger"! Words were exchanged between both men and the tempers seemed to calm down.

ROI-2 Ex 33 Page 7

5. While this last incident was taking place I was on the phone with the Mega Center Supervisor who asked me how old was the subject? I told her I didn't have any information on him and that she should have it. She looked over the paper work and stated that the daylight supervisor did not run a history on the subject. She typed the information in and the phone went silent. Then she said oh my god; I'm printing page 2 now! I asked her what she had and she said he has a record. I wrote down on a piece of paper "he had a record" and showed it to Lt. Thomas. Lt. Thomas said "show that to Short". I did and he looked surprised. The supervisor then started calling off the record as I wrote it down and once again showed it to Lt. Thomas who said "give that to Short". Lt. Thomas then had to notify the chain of command of the situation.

6. Ofc B. Smith brought the report into the CDO's Office with a copy of the subject's record and advised me that he had little to do with the incident and had in fact been sent to another ramp for a second incident while this first one was in progress. He handed me two reports when Lt. Thomas told him that he should have not done the gun report because Ofc. Azarcon's was the primary.

7. End of statement.

*Kevin P. Williamson*
Kevin P. Williamson

Memorandum for: Francine Anderson

From: *[signature: Reynald L Thomas]*
Reginald L. Thomas
Lieutenant, Federal Protective Service Division WPSOE

Subject: Additional fact reference to Cpl. Short, George

On Saturday June 8, 2002, a crime occurred at the Ronald Reagan Building Officer Azarcon, Jose and Bryan Smith, were assigned to investigate there was a report of a man with a gun. An investigation was conducted and it was determined that the man who was identified as John M. Jamieson was not a law enforcement person and had no permit to have the gun, which was identified as a 9 mm ruger.

Cpl. Short volunteered to respond to the incident and serving as the acting supervisor. Contact was made with Cpl. Short during the entire event, whereas Cpl. Short was instructed on several different occasions to have Officer Azarcon charge the suspect and transport him to bldg. 74 for processing.

Cpl. Short told me while he on the scene and he was making contact with the AUSA. I told Cpl. Short at that time that there was no need to talk to the AUSA, as the incident was cut and dry, that the man was in possession of a gun in the District of Columbia and the gun was not registered. Lt. Thomas asked Cpl Short if he had any problems with what he had been told and Cpl. Short replied no.

Kevin Williamson informed Lt Thomas after he returned to bldg. 74 that while he was gone, Cpl. Short had let the suspect go and gave him back the gun. Williamson also said that two investigators had called and that they sounded upset. I spoke with Cpl. Short who told me that the AUSA, Mary Lou Leary had told him to not arrest the suspect. I asked for and received the AUSA telephone number, which I called and made contact with a relay person who forwarded my telephone number to AUSA Leary.

I spoke with AUSA Leary who was at her resident, asking her what she knew about the situation at the Reagan Bldg. about the man with the gun. AUSA Leary told me that she did not advise Cpl. Short not to arrest the person but only said that if she was the papering attorney she may not have papered the case because the suspect cooperate with the officers.

Mrs. Leary apologized about the mix up and said that she was basing her advice from the information received from Cpl. Short. I indicated to Mrs Leary that she may have been used as a scapegoat by the officers, I apologized to her for the inconvenience she may have been put through.

The suspect involved in the situation at the Reagan bldg. According to his criminal record on hand was that he was found or plead guilty to four (4) felonies and fourteen (14) misdemeanors, from accessory to robbery to petit larceny.

Neither The gun nor the Ammunition was reported to be registered in the District of Columbia.



# COMMANDERS DAILY SHIFT LOG

DATE & TIME OF ENTRY, INCIDENT INFORMATION, INFORMATION
SHOULD BE PRINTED OR TYPED

6/2/05

NC0203762F2  1300 Pennsylvania Ave. N.W.  1535 Hours Enforcement Hq. was notified that the guards at the above location was detaining a suspect in reference to a man with a gun. Officers responded and confirmed that a male was in possession of a Ruger pistol Ser. # 31455272, which was located in the trunk of his vehicle the weapon was checked for stolen and the report of stolen check came back negative. Officer Azarcon, 1. Smith, B and Cpl. Short were the officers on scene who were advised by the watch commander to charge the person with CPWL and transport the suspect to bldg. 74. Cpl. Short elected to made contact with the U.S. Attorney Mary Lou Leary, who Cpl. Short gave information to her in reference to the incident and according to Cpl. Short Mrs. Leary said that she would decline prosecution of the suspect. The suspect's weapon was disassemble by the on scene officers and his weapon was returned to him and he was released. Mrs. Leary was contacted by Lt. Thomas and a different set of fact were received from the AUSA Leary. Su. was identified as John M. Jamieson, NCIC revealed a extensive criminal history. no record of a permit for the weapon. NO ARREST. P/u Cpl+Lt.

ROI-2 Ex 33 Page 11

# OFFENSE/INCIDENT REPORT

SECTIONS ARE PRINTED SEPARATELY. IF ADDITIONAL SPACE IS NEEDED, USE REVERSE OF FORM; IDENTIFY ITEMS.

1. TYPE: [X] a. ORIGINAL [ ] b. CONTINUATION [ ] c. SUPPLEMENT OR FOLLOWUP

REPORT CONTROL SYMBOL: PB-126-1

| | |
|---|---|
| CODE NO. | 1 9 0 1 5 |
| 2a. SORT | |
| 3. TYPE OF OFFENSE OR INCIDENT | BLDG SECURITY CHECK : CALLED TO SCENE |
| 4. CASE CONTROL NO. | N C 0 2 0 3 7 6 2 F 2 |
| BUILDING NO. | 0 0 5 1 1 6 A F |
| 6. ADDRESS | 1300 PENNSYLVANIA AVE., NW WASHINGTON, DC |
| NAME OF AGENCY/BUREAU | GSA |
| 7. AGENCY/BUREAU CODE | 4 7 0 0 |
| 8. SPECIFIC LOCATION | SOUTH RAMP TO PARKING GARAGE |
| 10. LOCATION | 0 6 0 7 6 T |
| DATE/TIME OF OFFENSE/INCIDENT | 6 0 8 0 2 / 1 4 3 0 |
| 12. DAY | SA |
| 13. DATE/TIME REPORTED | 0 6 0 8 0 2 / 1 5 3 0 |
| 14. DAY | SA |
| 15. JURISDICTION DO | 1. EXCLUSIVE [ ] 2. CONCURRENT [X] 3. PARTIAL [ ] 4. PROPRIETARY [ ] |
| 16. NO. DEMONSTRATORS | |
| 17. NO. EVACUATED | |

| ID CODE (a) | NAME AND ADDRESS (b) | AGE (c) | SEX (d) | RACE (e) | INJURY CODE (f) | TELEPHONE (g) |
|---|---|---|---|---|---|---|
| S U | JAMIESON, JOHN M. / 1111 RESERVOIR STR. HARRISONBURG, VA 22801 | 31 | M | C | 0 | HOME (757) 879-6984 |
| R P | MICHELLE, JEAN - MFR C/S SECURITY / SAME AS BLOCK #1 | | | | | BUSINESS (202) 565-1780 |

NARRATIVE (If additional space is needed, use reverse of this form)

THE UNIT S/255 (LEARD), FS 259 (PL SMITH) RESPONDED TO THE RRB SOUTH RAMP AND MADE CONTACT WITH BLDG SECURITY AND SU. SU STATED THAT WHILE ATTEMPTING TO ENTER THE PARKING GARAGE HE WAS ASKED TO HAVE THE VEHICLE CHECKED BY SECURITY. SU COMPLIED AND ADVISED SECURITY HE

23. EVIDENCE: [X] YES [ ] NO — TYPE: 10 Round Ammunition

24. ATTACHMENTS: a. CONTINUATION SHEET [X]; b. GSA FORM 3157 [X]

| NOTIFICATION | TIME NOTIFIED | TIME ARRIVED |
|---|---|---|
| OTHER (Specify) MIC CP #24 | 1 1 7 3 0 | |

25. SUSPECT STATUS: [X] d. NON-GOVT EMPLOYEE

26. DISPOSITION OF SUSPECT: [X] b. NOT ARRESTED

Complete GSA Form 3157 when there is a Suspect, Att. Burglary, Burglary, Att. Robbery, Robbery, or a Weapon is used.

| TIME | a. RECEIVED | b. ARRIVED | c. RETURNED TO SERVICE |
|---|---|---|---|
| | 1 5 3 3 | 1 5 4 4 | 1 7 2 7 |

BADGE: 3 7 2 — NAME (Printed) AND SIGNATURE: SMITH, BRYON R. — DATE: 6/8/02

26a. REVIEWED BY - NAME (Printed) AND SIGNATURE: [X] FPS LT R. Thomas — DATE: 6/8/02

32a. APPROVING OFFICIAL'S NAME (Printed) AND SIGNATURE: LT R. Thomas — DATE: 6/8/02

GENERAL SERVICES ADMINISTRATION — GSA FORM 3155 (REV. 7-83)

RO-2 EX 3 Page 26

FEDERAL PROTECTIVE SERVICE
CONTINUATION SHEET

CASE CONTROL NUMBER: NC0203762 F2   3803

HAD AN UNLOCKED P150. IN THE TRUNK AND AMMUNITION IN THE GLOVE COMPARTMENT. SU STATED HE HAD JUST COMPLETED A CONCEALED PERMIT CLASS IN VA, BUT WAS NOT AWARE HE COULDN'T TRANSPORT THE WEAPON (RUGER P.9E (9MM) SERIAL # 314 55372) IN DC AND WAS NOT AWARE THE RFK WAS FEDERAL PROPERTY. NCIC CHECKS FOUND THAT SU HAD NO WANTS OR WARRANTS AND THE P150. WAS LEGAL. CPL SMART CONTACTED THE U.S. ATTORNEY OFFICE AT ABOUT 1645 HRS AND SPOKE TO MARVIN LEARY (202) 514-5000. AFTER EXPLAINING THE SITUATION (F. SMART STATED THAT LEARY SAID THE WEAPON WAS TO BE DISASSEMBLED, PLACED IN SU'S CAR TRUNK AND THE 10 ROUNDS OF AMMUNITION BE CONFISCATED. THE SITUATION WOULD BE CLASSIFIED CLOSED AND THE SU DEPARTED AT ABOUT 1720 HRS. ALL FPS UNITS CLEARED THE SCENE WITHOUT INCIDENT AFTER RELEASING SU. THE AMMUNITION WAS TURNED OVER TO LT. THOMAS AT 1915 HRS FOR DESTRUCTION. AT 1802 HRS THIS UNIT WAS CONTACTED BY THE CDU'S OFFICE THAT THE MPD CENTER HAD JUST RECEIVED A FULL CRIMINAL HISTORY ON SU WHICH LISTED ABOUT 12 PRIOR INCIDENTS.

SHEET NO.   1372

SIGNATURE OF APPROVING OFFICER:
SIGNATURE OF REPORTING OFFICER:

RÜI-2 Ex 3B
Page 13