# AFFIDAVIT

**STATE OF:**

**CITY OF:**          **WASHINGTON, DC**

I, George A. Short, Federal Protective Service, make the following statement freely and voluntarily to Louis C. Whitsett who has identified himself to me as a Contract Investigator for the General Services Administration, investigating my complaint of discrimination (No. 03-NCR-WPS-GAS-14), knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to any interested party (those with a legal right to know). I hereby solemnly swear/affirm:

**Issue: Whether you [Complainant] were discriminated against when you learned on February 13, 2003, that Corporal Cassandra Talley was given a temporary promotion to sergeant, in which there was no announcement for the position and no selection process, therefore, you could not bid on the position, in which you have performed the duties of a sergeant since 1995, but have not been paid at the sergeant pay grade. The above claim is based on age (60 years: DOB April 3, 1943), sex (male), and unequal pay (Equal Pay Act).**

Page 1 of 6

EXHIBIT
ROI-14
5A

Initials _____

1.     My name is George A. Short.  I am now, and was at the time of the alleged discrimination, a Police Officer/Corporal, GS-0083-9, National Capital Region, Federal Protective Service.  I have worked for FPS for 33 years, the last 15 years as a corporal.  My first line supervisor is Sergeant Russell West and my second line supervisor is Lieutenant Reginald Thomas.  I am a male and my date of birth is April 1, 1943, although I recognize that the acceptance letter in this case indicates it is April 3, 1943.

2.     Since 1995, I have acted as a sergeant, but during that time, I was not paid at a sergeant's pay grade or given a temporary promotion to sergeant. While acting as sergeant, I never received any papers from management to document my status.  Management told me that acting as sergeant was part of my job description and therefore I could be required to perform sergeant's duties without a pay increase.

3.     Ms. Cassandra Talley was given a temporary promotion to sergeant in January 2003.  I had heard rumors about her being promoted around that time. When I later saw Ms. Talley with her new

Initials

sergeant stripes, I realized the rumors of her promotion were true. Her promotion was further confirmed to me when, on or about February 13, 2003, I read in the Federal Protective Service – National Capital Region Bulletin that Ms. Talley was given a temporary promotion to sergeant at the Homeland Security Headquarters office on Nebraska Avenue in Northwest Washington, DC.

4.    I was never asked by management to work at the Homeland Security Headquarters. Ms. Talley has less time in grade as a corporal and less experience as a federal police officer than I have. I also have more training generally, and as a supervisor specifically, than Ms. Talley. The position to which Ms. Talley was temporarily promoted was never advertised and other officers and I were not able to compete for it. Management never engaged in any selection process with regard to its decision to promote the selectee.

5.    Ms. Talley is currently acting as sergeant at Homeland Security and I am currently acting as a sergeant for FPS in Building 74. I have been acting in that position since 1995, but I have never received sergeant's pay. As acting sergeant I am performing the same duties as

Initials

Ms. Talley. For this reason, I believe I am being discriminated against on the basis of age, sex, and the Equal Pay Act.

6.    I do not know who made the decision to temporarily promote Ms. Talley. I heard rumors that at the Nebraska Avenue location, management wanted young, slim people who would project a certain image. I worked with Ms. Talley when she was a corporal and, based on that experience, I know I am more qualified than she is for the promotion she received. When Ms. Talley was promoted, she was the only corporal promoted at that time.

7.    Subsequent to the promotion of Ms. Talley, another corporal (male, age (50s)) was given a temporary promotion to sergeant. I am more qualified than this corporal because I have more experience and I have worked in the field whereas the other officer has not. While this officer has worked in communications, I have worked with law enforcement throughout the country. Also, I have experience making arrests in other states, but this individual does not.

8.    I believe that age is a factor in my non-selection because I am

Initials

older than both Ms. Talley and the other male corporal who received a temporary promotion. Management was aware of my age and that of other older officers and management believed that some of the older officers are looking to retire.

9.     In resolution of my complaint, I am seeking back pay equal to the difference between my pay and the sergeant's pay being received by Ms. Talley, from the date of Ms. Talley's promotion to the present, as well as compensatory damages.

I have read this statement consisting of six (6) pages and it is true and correct to the best of my knowledge and recollection. I have been given an opportunity to review the statement and make any changes, corrections, additions or deletions. I have initialed each page and signed the statement below.

Signature of Affiant _____

Initials _____

SUBSCRIBED AND SWORN BEFORE AT:


Washington, DC

(City, County, State)


ON THIS _28th_ DAY OF _May_, 2003


EEO Investigator/Notary

Initials _____

PRIVACY ACT NOTICE TO COMPLAINANT
FOR EMPLOYMENT DISCRIMINATION COMPLAINT INTERVIEW

## GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

## AUTHORITY

The authority to collect the information requested by affidavit, statement or other type of testimony is derived from one or more of the following:

Title 5, Code of Federal Regulations, Section 5.2 and 5.3; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; 7 Code of Federal Regulations, 15.6 and 15.52.

## PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the complaint of discrimination in the delivery of federally assisted or federally conducted programs or services. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the complaint of discrimination. The information may also be disclosed to any agency of the Federal Government having a working relationship with the U.S. General Services Administration (GSA) in the enforcement of its civil rights program, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

## EFFECTS OF NONDISCLOSURE

Disclosure of the information sought is voluntary. However, failure to furnish the information will result in your complaint being returned without action and being recommended for cancellation for failure to prosecute.

Signature of Interviewer

Date:  5/16/03

Signature of Complainant

Place:  Washington DC
Navy Yard
Bldg 74

## ADDENDUM TO AFFIDAVIT OF GEORGE A. SHORT
## REBUTTAL STATEMENT

The following statement is an addendum to my affidavit signed and dated
May 28, 2003, in the investigation of my EEO complaint (GSA Case
Number 03-NCR-WPS-GAS-14). I understand that I am still under oath.

1.     I was unaware that management was considering the detail of officers

from the Navy Yard unit to the new Homeland Security unit. I did not

request a detail to Homeland Security because I did not realize one was

available. Had I known about the opportunity to go to Homeland Security, I

would have accepted an offer to be detailed.


2.     With regard to the assertion that the Homeland Security detail was

considered an undesirable assignment, that is not entirely true. My sense is

that, for the younger officers, the detail was unattractive because it involved

being on a guard post as opposed to driving a vehicle, something the

younger officers generally preferred. On the other hand, the older officers,

like myself, would not have minded guard duty so, for us, the Homeland

Security detail would not have been undesirable. In any event, I believe that

it is the duty of all officers to accept any reasonable detail regardless of

whether it is to their personal liking.

3.    I think that the Homeland Security temporary promotions, like Ms.

Talley's, were unfair in that they overlooked the many other officers who,

like me, had much more seniority and experience and, therefore, were more

deserving of a temporary promotion. I have taken a supervisory course so I

know that seniority and experience should be important considerations in

deciding who should be promoted.


4.    With regard to the statements by management that the temporary

promotions were to give the detailed officers at Homeland Security an

incentive to remain on their assignment, I do not personally believe that was

the basis for the decision to give promotions to officers such as Ms. Talley.


Signature of Affiant (George A. Short)


Date

# AFFIDAVIT

**STATE OF: TEXAS**

**CITY OF:     FORT WORTH**

I, Patrick Moses, Federal Protective Service, make the following statement freely and voluntarily to Louis C. Whitsett who has identified himself to me as a Contract Investigator for the General Services Administration, investigating the complaint of discrimination (No. 03-NCR-WPS-GAS-14) of Corporal George A. Short, knowing that this statement may be used in evidence.    I understand that this statement is not confidential and may be shown to any interested party (those with a legal right to know). I hereby solemnly swear/affirm:

**Issue: Whether the Complainant [Corporal Short] was discriminated against when he learned on February 13, 2003, that Corporal Cassandra Talley was given a temporary promotion to sergeant, in which there was no announcement for the position and no selection process, therefore, he could not bid on the position, in which he has performed the duties of a sergeant since 1995, but has not been paid at the sergeant pay grade.  The above claim is based on age (60 years: DOB April 3, 1943), sex (male), and unequal pay (Equal Pay Act).**

1.      My name is Patrick Moses.  I am currently Chief, GS-301-14, Operational Support, Greater Southwest Region, Federal Protective Service.  However, at the time of the alleged discrimination, I served as Acting Deputy Regional Director,

EXHIBIT
ROI- 14
5 B

Initials PoM

National Capital Region, Federal Protective Service. That assignment went from October 29, 2002 and April 20, 2003. My first line supervisor was Trinidad Martinez, Acting Regional Director, National Capital Region, until January 9, 2003, and Dean Hunter, Acting Regional Director, National Capital Region, until April 20, 2003, and my second line supervisor was Wendell Shingler, Assistant Commissioner, FPS. I am a male and my date of birth is January 9, 1964.

2. I made the decision to give Corporal Cassandra Talley a temporary promotion to sergeant after she was detailed to the Homeland Security unit on Nebraska Avenue in NW Washington, DC. The promotion came about in connection with my efforts to provide developmental opportunities for our employees as well as the need to staff a new unit at Homeland Security.

3. At some point – I am not sure of the date – management met about sending employees to Homeland Security. Management asked the former police bureau to send down individuals who could go over to the Homeland Security unit. I sent word to the supervisors in the former police bureau, asking them for individuals who could do a detail at Homeland Security. In implementing these transfers, I informally discussed this initiative with the local union representative. In general, officers were concerned about standing a fix post at the Homeland Security Headquarters – this assignment is similar to those duties performed by the contract guards. For this reason, when officers did agree to accept the detail, management explored several options, which would serve as an incentive for the

officers to stay at the new assignment. With regard to the temporary promotions for officers serving in the Homeland Security unit, the promotions were given after the officers had been detailed. There was not an attempt on anyone's part to discriminate against Corporal Short or anyone else. The temporary promotions were simply an initiative to ensure that the morale of the individuals assigned to the Homeland Security unit remain at a high level.

4. With regard to any discussions about details/transfers to the Homeland Security unit or temporary promotions, Corporal Short's name never came up. The selections of officers to go to the Homeland Security and to receive temporary promotions were made, not through a formal selection process, but on an informal basis. For example, we did not do supervisory checks on the candidates detailed to the Homeland Security unit. I charged Dave Schmick and Maybelle Hallman, who had been designated as the commander and acting deputy commander, respectively, of the new Homeland Security Unit, with staffing that unit. In that regard, I asked Lieutenant Hallman to suggest names of candidates because she was very familiar with the National Capital Region having worked there for a number of years. I basically asked her to tell me who they needed to staff up their unit and I would support them. Again, it is important to note that several officers did not want to go on detail to Homeland Security; it was not considered a desirable assignment. Although I do not remember the specific names that Lieutenant Hallman recommended, I approved her recommendations because I trusted her judgment. It is my recollection that Corporal Cassandra Talley was

mentioned as someone who would serve in an outstanding manner.

5      While Corporal Short's name never came up in connection with details or promotions, he would not have been a candidate for a detail or promotion, even if it had, because of his recent disciplinary issues.  My recollection is that when I started my temporary assignment as Deputy Regional Director, Corporal Short was serving out a 30-day suspension for disrespecting his supervisor.  Because of the sensitivity and importance of the Homeland Security unit, I would not have approved any officer, particularly a lead officer, for a detail or promotion who had the disciplinary problems that Corporal Short had.   I had no direct work relationship beyond some incidental interaction with Corporal Short in connection with another EEO complaint of his that the agency was trying to mediate.

6.      I can say categorically that the failure of Corporal Short to receive a temporary promotion or any other promotion, and the temporary promotion of Corporal Talley, to sergeant was not based on sex, age, or pay discrimination.

7.      While reviewing the Daily Detail Assignments, I discovered that Corporal Short served as an acting sergeant.  I understand that that is not an unusual circumstance in the National Capital Region.  Because of OPM limitations, FPS has been limited in providing promotional opportunities for police officers, including promotions from corporal to sergeant – though there is a need for these necessary functions.  As a result, FPS has fulfilled many of its supervisory requirements by having officers, like Corporal Short, serve in a acting capacity at

a higher rank.

I have read this statement consisting of __5__ pages and it is true and correct to the best

of my knowledge and recollection.   I have been given an opportunity to review the

statement and make any changes, corrections, additions or deletions.  I have initialed each

page and signed the statement below.


Signature of Affiant _Patricia Moser_____



Acknowledged before me this
29th day of May. 2003

_Sara Meadors_
Notary Public

SUBSCRIBED AND SWORN BEFORE AT:

SARA MEADORS
Notary Public, State of Texas
My Commission Expires
September 22, 2005

_____

(City, County, State)


ON THIS_____DAY OF_____, 2003


_____

EEO Investigator/Notary


Initials _PVm_

# AFFIDAVIT

**STATE OF:**

**CITY OF:    WASHINGTON, DC**

I, Maybelle Hallman, Federal Protective Service, make the following statement freely and voluntarily to Louis C. Whitsett who has identified himself to me as a Contract Investigator for the General Services Administration, investigating the complaint of discrimination (No. 03-NCR-WPS-GAS-14) of Officer George A. Short, knowing that this statement may be used in evidence.    I understand that this statement is not confidential and may be shown to any interested party (those with a legal right to know). I hereby solemnly swear/affirm:

**Issue: Whether the Complainant [Corporal Short] was discriminated against when he learned on February 13, 2003, that Corporal Cassandra Talley was given a temporary promotion to sergeant, in which there was no announcement for the position and no selection process, therefore, he could not bid on the position, in which he has performed the duties of a sergeant since 1995, but has not been paid at the sergeant pay grade.  The above claim is based on age (60 years: DOB April 3, 1943), sex (male), and unequal pay (Equal Pay Act).**

1.    My name is Maybelle Hallman.  I am a lieutenant/police officer, GS-0083-11(7), working as a team leader with Federal Protective Service.    I am a female and my date of birth is April 21, 1956.  At the present time, I am on detail as





Initials

acting commander of the Homeland Security unit on Nebraska Avenue in NW Washington, DC, serving on a 120-day temporary promotion to captain, GS-0083-12(7).   At the time of the alleged discrimination, I was serving as a lieutenant at the Navy Yard location, National Capital Region, and had just been designated to be the deputy commander of the newly established Homeland Security unit. My immediate supervisor was then David Schmick, Commander of Homeland Security Headquarters, National Capital Region, and my second-line supervisor was Patrick Moses, Acting Deputy Regional Director, National Capital Region.

2.    Around January of 2003, I was asked by Acting Deputy Regional Director Patrick Moses to select officers who would work well as members of the newly established Homeland Security unit at Nebraska Avenue.  I was told to pick good people who did not have disciplinary problems.  In selecting officers for the Homeland Security detail, I went through the entire Navy Yard roster and, relying on my personal experience with the officers and their general reputation in the office, chose those officers I thought were the best suited for that detail.   One of the officers I selected was Corporal Cassandra Talley.  I chose her because she had a good reputation, did not have any disciplinary problems, and showed a "take charge" attitude.  In addition, on several occasions, I had personally worked with her on the midnight shift and found her to be a good employee. After she went on detail, she received a temporary promotion to sergeant from upper management in a personnel action.    I played no role in that decision and I was

Initials

notified of it just before it happened.   At my level, I am not authorized to promote anyone.   When Corporal Talley and other officers were detailed to Homeland Security, they did not know whether they would get temporary promotions.   The promotions occurred after they were detailed.

3.      When we were looking to staff the Homeland Security Unit, that detail was not considered an attractive assignment.  Officers generally did not want to be detailed to that unit.   It is my understanding that, after officers had been detailed to Homeland Security, a decision was made to promote some of those officers to provide them with an incentive to stay with the unit.

4.      I have had no work relationship with Corporal Short during my employment with FPS; we were on different shifts.  But I was aware that Officer Short had disciplinary problems, specifically a 30-day suspension for disrespecting his supervisor.  Corporal Short was never considered for a detail to Homeland Security because of those disciplinary problems, nor was any other officer with similar problems.  Further, Corporal Short never came to me or, to my knowledge, anyone else, and expressed an interest in going to Homeland Security.  This is not surprising since the Homeland Security detail was generally viewed by officers at FPS as an undesirable assignment.

5.      I am aware that that Corporal Short and many other officers have served as "acting" in higher positions.  In Corporal Short's case, he has served for some

Page 3 of 5                                                              Initials 

time as an acting sergeant at the Navy Yard unit. This is not unusual since Corporal was a team leader and, as such, expected to assume acting sergeant's duties as needed. Further, all of the corporals, including myself when I was a corporal, have served as acting sergeants in the National Capital Region. I do not know why Corporal Short has never received a promotion to sergeant. From time to time, FPS convenes a promotion board to consider candidates for promotion. I do not know whether Corporal Short has ever gone before the Promotion Board.

6.    I do not believe that Corporal Short's failure to receive a promotion to sergeant was the result of discrimination based on sex, age, or unequal pay.


I have read this statement consisting of __5__ pages and it is true and correct to the best of my knowledge and recollection. I have been given an opportunity to review the statement and make any changes, corrections, additions or deletions. I have initialed each page and signed the statement below.

Signature of Affiant _____


SUBSCRIBED AND SWORN BEFORE AT:

_Washington, DC_

(City, County, State)


ON THIS _____6th_____ DAY OF _June_, 2003


_[signature]_

EEO Investigator/Notary

Initials _[initials]_

# AFFIDAVIT

**STATE OF:**

**CITY OF:**        **WASHINGTON, DC**

I, Reginald Thomas, Police Officer/Lieutenant, National Capital Region, Federal Protective Service, make the following statement freely and voluntarily to Louis C. Whitsett who has identified himself to me as a Contract Investigator for the General Services Administration, investigating the complaint of discrimination (No. 03-NCR-WPS-GAS-14) filed by George A. Short, knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to any interested party (those with a legal right to know). I hereby solemnly swear/affirm:

**Issue: Whether the Complainant was discriminated against when he learned on February 13, 2003, that Corporal Cassandra Talley was given a temporary promotion to sergeant, in which there was no announcement for the position and no selection process, therefore, the Complainant could not bid on the position, in which he has performed the duties of a sergeant since 1995, but has not been paid at the sergeant**

Page 1 of 5

EXHIBIT
Ro I-1 ⁴
5 D

Initials *RLT*

pay grade.  **The above claim is based on age (60 years: DOB April 3, 1943), sex (male), and unequal pay (Equal Pay Act).**

1.    My name is Reginald Thomas.    I am currently a police officer/lieutenant supervisor, GS-0083-11, with the National Capital Region, Federal Protective Service.  My date of birth is June 25, 1949, and I am a male.  I am now, and was at the time of the alleged discrimination, the second-line supervisor of Corporal Short.   I have supervised him since 1984.   At the time of the alleged discrimination, my first-line supervisor was Captain Webb Mitchell, Shift Commander, and my second-line supervisor was Major Wellington Waters, Chief of the Enforecement Branch.

2.    In recent years, Corporal Short has met his performance standards and I would say that his performance has generally been acceptable.  However, earlier this year, I had to write him up when he failed to follow orders, used abusive language toward me, and failed to report for duty.    As a result of this misconduct, Corporal Short received a 30-day suspension.   Since that suspension, his job performance has improved.

Initials _Ret_

3.    I had absolutely no involvement in the temporary promotions that have recently been made in the National Capital Region of FPS. In fact, I still have received no formal notice from management regarding which officers have been promoted.  I was not asked to participate in the selection of candidates for any temporary promotions and I was not asked to recommend any names. Management also did not ask me about any officers under my supervision, including Corporal Short, in connection with temporary promotions.  I do not know how management recently selected which officers would receive temporary promotions, including the promotions given to detailees to the Homeland Security unit on Nebraska Avenue, in NW Washington.  I have no work relationship with Corporal Cassandra Talley and know nothing about how she was selected for a temporary promotion.

4.    I am aware that Corporal Short has served as an acting sergeant at FPS for many years, perhaps as long ago as 1995.  His situation, however, is not unusual.  There are many officers at FPS who, like Corporal Short, are the designated "leads" on their respective shifts

Initials _RLT_

and, accordingly, are expected to step in as acting sergeants when a permanent sergeant is not available at a particular time.    I do not know why Corporal Short was never promoted to sergeant.    It is my recollection that about ten years ago, Corporal Short was up for a sergeant's position at FPS but was turned down.

I have read this statement consisting of ___5___ pages and it is true and correct to the best of my knowledge and recollection.    I have been given an opportunity to review the statement and make any changes, corrections, additions or deletions.    I have initialed each page and signed the statement below.

Signature of Affiant _*Reginald R. Thomas*_

SUBSCRIBED AND SWORN BEFORE AT:

_*Washington, DC*_

(City, County, State)

ON THIS ___28th___ DAY OF _May_ , 2003

_____

EEO Investigator/Notary

Initials _RCt_