**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **GEORGE SHORT**          ) | Civil Action No. 1:05-cv-01034-RMU |
| )  | |
| Plaintiff,          ) | |
| )  | |
| v.          ) | |
| )  | |
| **MICHAEL CHERTOFF**          ) | |
| )  | |
| Defendant.          ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff GEORGE SHORT, by and through counsel, C. Sukari Hardnett, Esq. and the Law Office of C. Sukari Hardnett, submits this Opposition to Defendant's Motion for Summary Judgment and avers:

**I. FACTUAL BACKGROUND**

Plaintiff worked as a Federal Police Officer in the National Capital Region of the Federal Protective Service for over thirty years. *See* Affidavit of Plaintiff (attached as "Plaintiff's Exhibit A"). Plaintiff was not reprimanded, and he did not have a single disciplinary or other adverse employment action taken against him during the first thirty years of his employment. *See Id.* After Plaintiff reported that his supervisor was sexually harassing him and filed EEO complaints challenging some of Defendant's employment practices, Defendant began to retaliate against the Plaintiff, denying Plaintiff deployments, denying his leave requests, and suspending the Plaintiff for alleged misconduct without any legitimate basis for doing so. *See Id.*

Since 1987, Plaintiff worked as a Lead Officer. *See* Affidavit of Plaintiff (Exhibit A). As part of his duties he was required to act as a supervisor when none was present, which was routinely the case. *See* Defendant's Motion for Summary Judgment at p. 37; s*ee also* Affidavit of Plaintiff (Exhibit A). Since 1995 Plaintiff continued to work as acting supervisor, yet Defendant never formally promoted the Plaintiff to the position of and never gave the Plaintiff the salary increase to which he would be entitled as a supervisor. *See Id.* Then, in February 13, 2003, Defendant promoted a substantially younger female with less employment experience to a supervisor position. *See Id.* Defendant never posted the job and did not make the job opening known to other employees. *See* Defendant's Motion for Summary Judgment at p. 40. Defendant simply promoted the younger female employee to the position, without giving the Plaintiff and other older male employees an opportunity to apply for it. *See Id.* Defendant continued to use the Plaintiff as an acting supervisor without any incumbent increase in salary or title up through the time that Plaintiff was forced into retirement. *See* Affidavit of Plaintiff (Exhibit A).

As reprisal, Defendant wrongfully denied the Plaintiff deployment opportunities for two years. *See* Affidavit of Plaintiff (Exhibit A). In this action, Plaintiff challenges Defendant's failure to select him for deployments to New York and to the Kentucky Derby. *See Id.* The officers that Defendant selected for these deployments were all younger than the Plaintiff. *See* Defendant's Motion for Summary Judgment at pp. 37-39; s*ee also* Affidavit of Plaintiff (Exhibit A). Officers on deployment receive greater financial compensation because of the per diem they receive, so Defendant's actions caused the Plaintiff to suffer financial damages. *See* Affidavit of Plaintiff (Exhibit A).

2

Plaintiff also challenges actions Defendant took against him in reprisal, including imposing a thirty day suspension and harassment. *See Id.*

Not surprisingly, in order to justify its actions, Defendant has presented alleged non discriminatory reasons to explain its actions. As Plaintiff details herein, these reasons are simply a pretext to conceal an ongoing pattern of discrimination. During the time that his EEOC charges were pending, Plaintiff endured the mistreatment and discrimination. *See* Affidavit of Plaintiff (Exhibit A). Plaintiff could finally take no more. *See Id.* When the EEOC issued its final agency decision, refusing to take action against the Defendant, Plaintiff felt that he had no other choice but to resign, which he did soon thereafter. *See Id.* Plaintiff then filed this action for constructive discharge, for violations of the Equal Pay Act and reprisal, and for age, sex and color based discrimination.

Defendant has filed a motion for summary judgment alleging that Plaintiff has failed to state cognizable claims. Defendant's motion should be denied. As detailed herein, Plaintiff has cognizable claims. At the very least there are genuine issues of material fact that precludes the court from entering summary judgment in favor of the Defendant.

**II. STATEMENT OF MATERIAL FACTS UPON WHICH THERE IS A DISUPTE**

Plaintiff identifies each of the material facts that are for purposes of this motion in dispute:

(I)    Defendant's decision not to promote the Plaintiff was based upon Plaintiff's age, sex, color and or race, and not for the reasons that Defendant asserts. *See*

Defendant's Motion for Summary Judgment pp. 39-40; s*ee also* Affidavit of Plaintiff (Exhibit A);

(II)    Defendant's failure to promote the Plaintiff after almost three decades of service is part of a pattern and practice of discrimination. *See* Defendant's Motion for Summary Judgment generally; s*ee also* Affidavit of Plaintiff (Exhibit A).

(III)    Defendant suspended the Plaintiff for legitimate non discriminatory reasons. *See* Defendant's Motion for Summary Judgment pp. 23-29; s*ee also* Affidavit of Plaintiff (Exhibit A).

(IV)    Defendant denied the Plaintiff leave and deployment opportunities in part because of his complaints about sexual harassment and based upon on his age, color, race and/or sex. *See* Defendant's Motion for Summary Judgment pp. 20-21, 35-36; s*ee also* Affidavit of Plaintiff (Exhibit A).

(V)    Plaintiff failed to submit medical documentation to support his leave request. *See* Defendant's Motion for Summary Judgment at p. 29; s*ee also* Affidavit of Plaintiff (Exhibit A).

(VI)    Plaintiff failed to comply with his direct supervisor's directives when he failed to arrest the visitor at the Ronald Reagan Building. *See* Defendant's Motion for Summary Judgment pp. 26-27; s*ee also* Affidavit of Plaintiff (Exhibit A).

(VII)    Plaintiff did not have authority to release the visitor at the Ronald Reagan Building. *See* Defendant's Motion for Summary Judgment pp. 26-27; s*ee also* Affidavit of Plaintiff (Exhibit A).

(VIII)    Plaintiff's constructive discharge claims are not barred, as the facts that give rise to this claim are encompassed in his EEOC filings and would naturally have

arisen from the administrative investigation. *See* Defendant's Motion for Summary Judgment pp. 11-13; s*ee also* Affidavit of Plaintiff (Exhibit A).

### III. STATEMENT OF MATERIAL FACTS THAT ARE NOT IN DISUPTE

The following material facts are not in dispute, and they evince that the reasons asserted by the Defendant purportedly as the basis for its decision to deny the Plaintiff promotions and deployment opportunities constitutes a pretext to conceal discrimination:

(I)     Plaintiff is an African-American male who is over sixty years of old. *See* Affidavit of Plaintiff (Exhibit A).

(II)    Plaintiff worked for the Defendant for thirty-three years. *See* Affidavit of Plaintiff (Exhibit A).

(III)   For thirty years Plaintiff worked without any disciplinary actions, suspensions or reprimands. *See* Affidavit of Plaintiff (Exhibit A).

(IV)    Plaintiff worked in the capacity of an acting supervisor for fifteen years since 1987. *See* Affidavit of Plaintiff (Exhibit A).

(V)     Since 1995 through the time that Plaintiff retired he worked continually as a Lead Officer without interruption. *See* Affidavit of Plaintiff (Exhibit A).

(VI)    Plaintiff worked in the capacity as an acting supervisor, yet he did not receive any increase in salary based upon his work as a supervisor. *See* Affidavit of Plaintiff (Exhibit A).

(VII)  Defendant promoted a younger female employee to the position of supervisor.  *See* Defendant's Motion for Summary Judgment at p. 39; s*ee also* Affidavit of Plaintiff (Exhibit A).

(VIII)  The younger female employee that Defendant promoted to the position of supervisor had less work experience than the Plaintiff.  *See* Affidavit of Plaintiff (Exhibit A).

(IX)  The younger female employee that Defendant promoted to the position of supervisor had less supervisory experience than the Plaintiff.  *See* Affidavit of Plaintiff (Exhibit A).

(X)  Plaintiff performed the same duties under the same working conditions as the younger female employee that Defendant promoted to supervisor.  *See* Affidavit of Plaintiff (Exhibit A).

(XI)  The supervisor position to which Defendant promoted the younger female employee was not posted or otherwise made known to other employees.  *See* Defendant's Motion for Summary Judgment at p. 40; s*ee also* Affidavit of Plaintiff (Exhibit A).

(XII)  It was only after Plaintiff voiced complaints about sexual harassment that he was subject to suspension and disciplinary actions.  *See* Affidavit of Plaintiff (Exhibit A).

(XIII) Plaintiff was continually passed over for promotions.  *See* Affidavit of Plaintiff (Exhibit A).

## IV. THE REASONS THAT DEFEDNANT ASSERTS TO SUPPORT ITS DECISION NOT TO PROMOTE THE PLAINTIFF AND IN DENYING PLAINTIFF DEPLOYMENTS ARE ONLY A PRETEXT TO CONCEAL DISCRIMINATION

Defendant alleges that its decision not to promote the Plaintiff to the position of supervisor after more than three decades of service was based upon legitimate nondiscriminatory reasons. This comes as no surprise. Although Defendant's assertions are belied by the fact that it had the Plaintiff work in the capacity and had the Plaintiff perform the same duties of a supervisor for years, in every discrimination case the defendant comes up with some explanation to conceal its discriminatory actions. It is unlikely that any defendant has ever just simply admitted to misconduct. This is true in this case. Defendant's justifications are a pretext for discrimination.

### A. DENIAL OF PROMOTION

It is certainly telling that the Plaintiff worked for the Defendant for over thirty years and was never given any promotions, despite three decades of service with a good record and no disciplinary actions. Plaintiff served as acting supervisor for almost ten years, yet Defendant never official promoted him to the position. To add insult to injury, Defendant promoted a significantly younger female to a supervisor position instead of giving the position to him when he had been acting as supervisor for fifteen years. The officer did not even have the experience, nor did he have the time on the job that Plaintiff had.

Defendant asserts as its justification for the above: (1) that the Plaintiff allegedly was not similarly situated to the substantially younger employee who was given the position; (2) Plaintiff's had "recent disciplinary issues;" (3) the failure to advertise the

7

position does not give any inference of discrimination; (4) Plaintiff cannot establish an Equal Pay Act claim because he was paid more than the Plaintiff; and finally (5) that Plaintiff did not show that he performed substantially similar work. *See* Defendant's legitimate non discriminatory for its failure to promote the Plaintiff are hard to accept in this context. Defendant's Motion at p. 40.

These reasons are pretext for discrimination. To begin with, none of these reasons explains why the Plaintiff had never been promoted during his over thirty years of employment. Defendant only argues about the last time that it passed the Plaintiff up for a promotion, without even attempting to explain why when the Plaintiff worked without any disciplinary problems for decades that the Defendant failed to promote him. Moreover, the employees who Defendant promoted were typically younger employees. None of the reasons that the Defendant provides can rebut the clear inference of discrimination that these facts establish.

Defendant was similarly situated to the Plaintiff. Defendant's assertion that the Plaintiff was not because the young employee who received the promotion did not have any "disciplinary issues," is just an attempt to use the disciplinary actions that Defendant imposed as a means of reprisal to further justify its failure to promote the Plaintiff. As a Lead Police Officer Plaintiff was required to act as a supervisor whenever one was not available. For years Plaintiff worked in this capacity, yet he was not promoted. Plaintiff has a cognizable Equal Pay Act claim vis a vis the younger female employee who Defendant gave the position. Plaintiff performed the same functions as the younger employee who was promoted to the supervisor position. Just because the Plaintiff may have been paid at a higher wage rate because of his many years of service does not bar

Plaintiff's claim; Plaintiff is entitled to claim as damages the difference in salary that he would have received had he been promoted. The fact that the other employee was paid less under these circumstances does not bar an Equal Pay Act claim. Clearly Plaintiff alleges that Defendant engaged in an intentional violation of the Equal Pay Act. Thus, the statute of limitations is three years and not two years as Defendant alleges.

The promotion of the younger employee to the position of supervisor over the Plaintiff was just a part of Defendant's ongoing pattern of discrimination. The reasons given by the Defendant simply cannot explain the years of denial of promotions. Defendant has not cited to any personality defect or any inability on the part of the Plaintiff to handle his job duties. Nor could the Defendant, for it had the Plaintiff act in this capacity and never questioned Plaintiff's ability to do so. The promotion of the younger female officer in this context provides a strong inference of discrimination. Defendant argues that the fact the position was not advertised cannot be used to give an inference of discrimination. Plaintiff disagrees. The fact that a substantially younger employee was given a position for which none of the other older employees were told about or given an opportunity to apply, reeks of discrimination.

### B. KENTUCKY DERBY DEPLOYMENT

The inference of discrimination is equally apparent in the failure of the Defendant to select the Plaintiff to serve as one of the officers for the Kentucky Derby Deployment. Defendant's agent who was responsible for selecting the officers for deployment, Lieutenant Willie Sampson, explains that the alleged non discriminatory reason why Plaintiff was not selected was that Sampson needed nineteen officers and that he

allegedly called officers from a list and was "able to identify the nineteen officers before he got to Plaintiff's name." Defendant's Motion for Summary Judgment at p. 35. How convenient. The very officer who admittedly had knowledge of Plaintiff's prior EEO complaints is told to select nineteen officers and allegedly is able to do so before reaching Plaintiff's name on an alleged "list." This is certainly incredulous when based upon his thirty year tenure and experience Plaintiff should have most certainly been one of the first officers to consider, and when the employees that Defendant selected happened typically to be younger employees.

### C. BUFFALO DEPLOYMENT

To justify its failure to select the Plaintiff for the deployment to Buffalo, Defendant states that the officers who were selected were from the morning shift, while Plaintiff worked on the evening shift. Thus, Defendant argues that the Plaintiff was not similarly situated to the other employees. This argument would be believable were it not for the fact that Defendant denied Plaintiff's promotion requests for over two years, after Plaintiff filed his EEO charge and complained about sexual harassment. Defendant has given a reason to justify its actions, but they are not credible, particularly because all of the employees who were selected for the deployment were younger than the Plaintiff. The denial of deployment was not a trivial matter, because the increased per diem received on these deployments amount to a significant financial benefit.

Defendant asserts many reasons to conceal the fact that it wrongfully denied Plaintiff's deployment request. It is certainly worthy of note that Defendant has not cited to any performance or personality based reasons for not selecting the Plaintiff for

10

deployment. Under the circumstances there is certainly a strong inference of reprisal and discrimination.

### D. THIRTY DAY SUSPENSION

To justify why it selected a substantially younger employee over the Plaintiff for the position of supervisor Defendant states that Plaintiff was not considered for the position because of Plaintiff's "recent disciplinary issues." However, the disciplinary issues to which Defendant cites (a thirty-day suspension and alleged AWOL) only occurred happened because of Plaintiff's prior EEO and sexual harassment complaints. Were it not for these complaints, Defendant would not have suspended the Plaintiff or charged him AWOL. Plaintiff was never reprimanded or suspended until after he made these complaints.

Plaintiff was suspended for thirty days allegedly because he failed to follow the directives of his supervisor in releasing a visitor to the Ronald Reagan building and not taking him into custody. Defendant actually has not given a full account of what happened that day, understandably because it does not support the suspension that was imposed. The facts of what transpired actually are that while screening vehicles entering the property, an out of state visitor voluntarily disclosed that he had an unloaded weapon in the trunk of his vehicle. *See Id.* The visitor was cooperative and voluntarily disclosed that he had a weapon in the trunk. *See Id.* Plaintiff attempted to contact his supervisor, but he could not reach him. *See Id.* In accordance with his training Plaintiff conducted a US Attorney General's office for guidance on how to handle the matter. The US

Attorney informed the Plaintiff that based upon what he told her that there was no reason to arrest the man. *See Id.* Thus, Plaintiff did not to take the visitor into custody. *See Id.*

Defendant asserts that Plaintiff disobeyed a direct order to arrest the visitor. However, this is not true. Plaintiff was acting supervisor and had authority not to arrest the visitor. Plaintiff had not disobeyed any order, for he could not reach his supervisor to obtain the order. It was only when the Defendant attempted to chastise the Plaintiff for doing so that words were exchanged between the Plaintiff and his supervisor and Plaintiff suspended for thirty days. Defendant asserts that it was well within its guidelines in suspending the Plaintiff. Defendant could have within its guidelines imposed a lesser punishment and, in fact, the disciplinary guideline to which Defendant cites seems to indicate that a lesser punishment was warranted.

Nonetheless, Defendant suspended the Plaintiff which was just part of the harassment that Plaintiff was forced to endure, including having his weapon, personal property and vehicle withheld from him. *See Id.* Defendant argues that Plaintiff was not similarly situated to the other officers on the scene who were not disciplined for arresting the visitor. However, this misses the point. Defendant only imposed the punishment that it did as a form of reprisal. This is unlawful regardless of whether the Plaintiff has shown that he was similarly situated to the other officers on the scene.

### E. CHARGED AWOL

In addition to suspending the Plaintiff, Defendant also began to deny Plaintiff leave to which he was entitled as another from of harassment and reprisal. Defendant took these actions in the hoped of pressuring older employees out of their positions.

Plaintiff presented documentation to support the emergency leave that he took, and in fact Plaintiff returned to work prior to the date that his doctor cleared him to return to work. *See Id.* Nonetheless, Defendant charged the Plaintiff as being AWOL. No matter how early Plaintiff submitted his leave requests, Defendant would deny Plaintiff leave. This constitutes part of the harassment to which Plaintiff was subjected and had to endure.

When viewed in its totality Defendant's discriminatory practices are apparent. For over three decades Plaintiff worked without incident and had an unblemished record. Defendant makes no allegations that Plaintiff performed unsatisfactorily on the job, nor does Defendant allege that the Plaintiff could not adequately perform his job duties. For years Plaintiff performed the duties of a supervisor but was never promoted to the position. Instead Defendant promoted a much younger employee who did not have the work experience or time on the job that Plaintiff had. When Plaintiff protested these actions, all of a sudden he is suspended, his leave is denied, and his vehicle, weapon and personal property withheld from him. Although Plaintiff had three decades with an unblemished record, when he challenges Defendant's discriminatory conduct only then is his unblemished record tarnished. The discriminatory actions that Plaintiff challenges in this action are only indicative of a pattern of discrimination in which Defendant engaged over the course of many years.

### V. PLAINTIFF HAS A COGNIZABLE CONSTRUCTIVE DISCHARGE CLAIM:

After enduring what he had over his years of dedicated service, Plaintiff could take it no longer. He had worked and dedicated himself to his job, even working as a supervisor for years without compensation. Then when he challenged Defendant's actions, he was retaliated against and forced out of his position. Finally, the death knoll

13

came when the EEOC issued its Final Agency Decision finding in favor of Plaintiff's oppressor employer. Plaintiff could not continue to endure the mistreatment, denial of leave, unwarranted disciplinary measures, and other harassment and mistreatment any longer.

Defendant argues that Plaintiff failed to exhaust his administrative remedies and could not bring his wrongful discharge claim in this action because Plaintiff did not go back to the EEOC and file a new charge to challenge the same misconduct that the EEOC had just ruled in favor of the Defendant on. This would make no sense and would be an utter waste of everyone's resources. The EEOC already ruled in favor of the Defendant. That notice triggered Plaintiff's right to pursue his claims in court. Plaintiff did not have to exhaust any other claims because the EEOC investigation, for a party can bring a legal action based upon claims that are not expressly raised in an EEOC charge, when the claims would naturally have arisen from an investigation of the administrative complaint. *See Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995).

Plaintiff's constructive discharge claims arises out of the same misconduct that Plaintiff challenged in his EEOC charge and would have naturally arisen from an investigation of his administrative charge. The EEOC denied Plaintiff's charge just eleven days before the Plaintiff was constructively discharged, so it would make little sense for the Plaintiff to file another charge after the EEOC had already denied his claims. Defendant's assertions that the Plaintiff failed to exhaust his administrative remedies are without merit.

A finding of constructive discharge depends on whether the employer "deliberately made working conditions intolerable" and drove the employee out. *Clark v.*

*March,* 665 F.2d 1168, 1173 (D. C. Cir. 1981)(internal citations and modifications omitted.)   Constructive discharge thus requires a finding of discrimination and the existence of certain "aggravating factors."  *Id.* at 1174; *see also Dashnaw v. Pena,* 12 F. 3d 1112, 1115 (D. C. Cir.  1994). (These "aggravating factors" are those things that would force an employee to leave. *Clark,* 665 F. 2d at 1174.); *Mungin V. Katten Muchin & Zavis*, 116 F.3d 1549, 1558 (D. C.Cir.1997).

In this case Plaintiff has set forth facts that show that his employer deliberately made working conditions intolerable by denying him promotion, leave, deployments, and by withholding his equipment, weapon and vehicle.  These aggravating factors fully support Plaintiff's constructive discharge claim.

## VI. PLAINTIFF HAS A VALID CLAIM FOR HOSTILE WORK ENVIRONMENT:

To state a claim for hostile work environment, Plaintiff must prove that his workplace was "permeated with discriminatory intimidation, ridicule and insult that it was sufficiently pervasive as to alter the conditions of his employment.  *See Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993).

As Plaintiff testified in his deposition (P. 109-110):

I would say I went – let's see, like through a change for nine years of stress and not being promoted…Tally had never been on deployment never had the experience.  Two guys made sergeant when I should have…I was always confronted by my co-workers about how they're treating me, and they couldn't see how I could stay there and take that.  I had to eat crow everyday for nine years.

Plaintiff testimony provides details on how he was constantly subjected to an environment permeated with discriminatory intimidation, ridicule and insult.  Plaintiff was constantly denied promotions and deployments, and he endured insult and ridicule in

seeing younger less experienced employees promoted above him despite his years of faithful service, and in having his co-workers constantly questioning him on how he could endure the mistreatment. Then when Plaintiff challenged the misconduct, he was retaliated against, denied job opportunities, suspended, written up, and his leave was denied. This clearly altered the conditions of his employment. The environment was so hostile that Plaintiff had to leave his employment. Plaintiff avers that based upon these facts that he does have a cognizable claim for hostile work environment.

## VII. CONCLUSION

Plaintiff has presented facts and evidence to show that Defendant's alleged legitimate non discriminatory reasons asserted to justify its actions are a pretext for discrimination. Accordingly, Plaintiff asks that the Court deny the Defendant's Motion for Summary Judgment and grant all such further relief as the Court deems just and proper.

Respectfully submitted,
GEORGE SHORT

By: ___/s/___
    Counsel

C. Sukari Hardnett, Esq.
Law Office of C. Sukari Hardnett
1111 Bonifant Street
Silver Spring, MD 20910
(301) 587-7001