## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GEORGE A. SHORT,             :
                                      :
               Plaintiff,       :     Civil Action No.:    05-1034 (RMU)
                                        :
               v.             :     Document No.:    17
                                        :
MICHAEL CHERTOFF,         :
In his official capacity as Secretary of the    :
U.S. Department of Homeland Security,    :
                                        :
              Defendant.     :

## MEMORANDUM OPINION

### GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

George Short, a former employee of the U.S. Department of Homeland Security, ("the plaintiff") brings suit for employment discrimination against Michael Chertoff ("the defendant") in his official capacity as Secretary thereof. In short, the plaintiff alleges that the defendant subjected him to a hostile work environment and discriminated against him based on his age, race and sex.[1] Specifically, he challenges his non-selection for a deployment to Buffalo, New York; disciplinary sanctions including records of infractions, a notice of proposed suspension, and a 30-day suspension; and harassment regarding the misplacement of his weapon and work and vehicle, denial of his requested leave, and missing work supplies. He claims that these acts were in violation of and in reprisal against his prior invocation of his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; the Age Discrimination in Employment

---

[1]     The plaintiff also alleges that he was constructively discharged, but the court earlier dismissed this claim because of his failure to exhaust his administrative remedies before filing suit. Mem. Op. (Nov. 26, 2007) at 1-2.

Act ("ADEA"), 29 U.S.C. §§ 623 *et seq.*; and the Equal Pay Act ("EPA"), 29 U.S.C. §§ 201 *et seq.*  The defendant maintains that the plaintiff has failed to articulate a prima facie case on all of these claims; the defendant has also submitted nondiscriminatory reasons for each of its contested decisions.  Because the court is discouraged from considering whether the plaintiff has put forth a prima facie case when litigation has progressed to summary judgment and the defendant has proffered a nondiscriminatory justification, the court only decides whether the plaintiff has produced sufficient evidence for a reasonable juror to conclude that the defendant's reasons are a pretext concealing unlawful discrimination.  Because the plaintiff has not carried his burden of producing rebuttal evidence challenging the defendant's proffered reasons, the court grants summary judgment for the defendant.

## II.  FACTUAL & PROCEDURAL BACKGROUND

No dispute of a material fact exists.[2]  The plaintiff is a black male over the age of forty who formerly worked for the U.S. Department of Homeland Security ("the department"), which

---

[2]    The plaintiff identifies eight material facts in dispute.  Pl.'s Opp'n at 3-5.  Almost all of these are questions of law, however.  And those that are not (Facts V and VI), do not contradict any specific fact asserted by the defendant.

he claims discriminated against him on the basis of his race, sex and age.[3]  Compl. ¶ 1.  In Count

1 of his complaint charging discrimination under Title VII of the Civil Rights Act of 1964, 42

U.S.C. §§ 2000e *et seq.*, the plaintiff alleges that he performed the duties of a sergeant without

commensurate pay from 1995 until his discharge on February 25, 2005, and that on February 13,

2003 he learned that the Department temporarily promoted a younger, less qualified female

corporal to sergeant without first opening the position to competition.  *Id.* ¶ 8; Pl.'s Opp'n to

Def.'s Mot. for Partial Dismiss ("Pl.'s Opp'n") at 2.  More generally, Count 1 also alleges that

the defendant discriminated against the plaintiff based on his race, sex and age by "subjecting

him to constant harassment, work conditions which were humiliating and by forcing him to retire

before he was ready to retire."  *Id.* ¶ 7.  Count 2 reiterates this allegation of unfair promotion

---

[3]      The plaintiff's complaint is short and general.  The only specific instances of alleged
discrimination described are: (1) disapproval of the plaintiff's leave request to accompany his
wife for surgery; (2) refusal to accept his medical documentation for an illness; (3) non-selection
for promotion or pay raise for performing duties of a sergeant from 1995 through his retirement
on February 3, 2005; and (4) temporary promotion of a younger, female corporal to a sergeant
position that was never posted or announced.  Compl. ¶ 8.  More generally, he alleges that the
defendant subjected him to "constant harassment [and] work conditions which were humiliating .
. . forcing him to retire," *id.* ¶ 7, and that the defendant "subject[ed] him to conditions and terms
of employment that were not enforced on younger employees," *id.* ¶ 11.  The defendant
extensively briefs the alleged instances of discrimination found in the plaintiff's two Equal
Employment Opportunity Office Reports of Investigation ("EEO Reports"), even though several
of the events described therein do not appear anywhere in the plaintiff's complaint filed in this
civil action.  *See* Def.'s Mot. for Summ. J. at 4 n.1 (explaining that when defense counsel sought
discovery of events referenced in complaint, plaintiff's counsel merely referred defense counsel
to EEO Reports).  Ordinarily, the court would refrain from even considering these events, as they
are not pleaded or even alleged.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
Nevertheless, because the parties have comprehensively briefed these events, because they could
arguably be inferred from the plaintiff's workplace harassment claim, and because the D.C.
Circuit has conspicuously made known its refusal to countenance the practice of considering
whether a plaintiff has made out a prima facie discrimination case when proceedings have
advanced to summary judgment, the court will proceed as if these facts were properly pleaded.
*Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 2008 WL 819989, at*3
(D.C. Cir. Mar. 28, 2008).

under the rubric of an age discrimination claim governed by the ADEA.  Compl. ¶¶ 9-11.  Count

3 phrases the allegation as gender discrimination violating the EPA, for which the plaintiff seeks

$500,000 in damages.  *Id.* ¶¶ 12-15.  The complaint concludes with a prayer for damages for

"back pay, future pay, interest and all damages the plaintiff is entitled to."  *Id.* ¶ 21.


## III.  ANALYSIS

### A.  Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are

"material," a court must look to the substantive law on which each claim rests.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could

establish an element of a claim or defense and, therefore, affect the outcome of the action.

*Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable

inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.

*Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere

existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion

for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make

a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

## B. Legal Standard for Gender, Age and Race Discrimination

Generally, to prevail on a claim of discrimination under Title VII or the ADEA, a plaintiff must follow a three-part burden-shifting analysis known as the *McDonnell Douglas* framework. *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003). The Supreme Court explained the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection" . . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination . . . . The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted) (quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).

To establish a prima facie case of race or gender discrimination under Title VII, the plaintiff must show that "(1) [he] is a member of a protected class; (2) [he] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999); *Stewart v. Ashcroft*, 352 F.3d 422, 428 (D.C. Cir. 2003); *Carroll v. England*, 321 F. Supp. 2d 58, 68 (D.D.C. 2004). To establish a prima facie case of age discrimination under the ADEA, the plaintiff must demonstrate "facts sufficient to create a reasonable inference that age discrimination was a determining factor in the employment decision." *Cuddy v. Carmen*, 694 F.2d 853, 856-57 (D.C. Cir. 1982); *Miller v. Lyng*, 660 F. Supp. 1375, 1377 (D.D.C. 1987). Such an inference is created if the plaintiff can show (1) he belongs to the statutorily protected age group; (2) he was qualified for his position and was performing his job well enough to meet his employer's legitimate expectations; (3) he suffered an adverse employment action despite his qualifications and performance; and (4) he was disadvantaged in favor of similarly situated younger employees. *Reeves*, 530 U.S. at 142; *Hall*, 175 F.3d at 1077; *Paquin*, 119 F.3d at 26 (citing *Coburn v. Pan Am. World Airways, Inc.*, 711 F.2d 339, 342 (D.C. Cir. 1983)).

"The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253. If the plaintiff establishes a prima facie case, a presumption then arises that the employer unlawfully discriminated against the employee. *Id.* at 254. To rebut this presumption, the employer must articulate a legitimate, non-discriminatory reason for its action. *Id.* The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Id.* Rather, "[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support

6

a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).

If the employer successfully presents a legitimate, non-discriminatory reason for its actions, "the McDonnell Douglas framework – with its presumptions and burdens – disappears, and the sole remaining issue is discrimination *vel non*." *Lathram*, 336 F.3d at 1088 (internal citations omitted); *Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 2008 WL 819989, at *3 (D.C. Cir. Mar. 28, 2008) (noting that "the prima facie case is a largely unnecessary sideshow"). The district court need resolve only one question: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Brady*, 2008 WL 819989, at *3. The court must consider whether the jury could infer discrimination from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of discrimination that may be available to the plaintiff. *Waterhouse v. District of Columbia*, 298 F.3d 989, 992-93 (D.C. Cir. 2002) (quoting *Aka*, 156 F.3d at 1289). The plaintiff need not present evidence in each of these categories in order to avoid summary judgment. *Aka*, 156 F.3d at 1289. Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the total circumstances of the case. *Id.* at 1291..

### C. The Plaintiff Fails to Rebut the Defendant's Nondiscriminatory Reason for Its Non-Selection of the Plaintiff for Deployment in Buffalo

The plaintiff claims that his non-selection for a deployment to Buffalo, N.Y. on September 18, 2002 constituted age discrimination against him as well as retaliation for a sexual

harassment complaint he made orally to Captain Mitchell against Lieutenant Thomas in 2001. Def.'s Mot. for Summ. J., Equal Employment Opportunity Office Report of Investigation-2 ("ROI-2"), Ex. 5 at 1-2; Def.'s Mot. for Summ. J., Short Dep. at 22-28.  The defendant asserts that the officer charged with selecting volunteers for deployment, Captain John Poston, was told on September 17, 2002 that there was an emergency need for deployments at Buffalo and "told to find anyone who could leave right away and that had a government credit card."  Def.'s Mot. for Summ. J. at 20.  Poston hoped to gather the volunteers and make a 4:00 p.m. flight departure that day.  *Id.*  Poston canvassed the day shift, where six officers were on duty, all of whom volunteered for deployment.  *Id.*  Poston selected five of the officers; they were unable to secure a flight that evening but left on a flight the next morning.  *Id.*  The defendant maintains that the plaintiff was not selected because he was on the evening shift (3:00 p.m. to 11:00 p.m.), by which time the department had already gleaned the volunteers it needed.  *Id.*

The plaintiff contends that the defendant's explanation is not credible "because all of the employees who were selected for the deployment were younger than the Plaintiff."  Pl.'s Opp'n at 10.  The plaintiff also directs the court to "the fact that Defendant denied Plaintiff's promotion requests for over two years, after Plaintiff filed his EEO charge and complained about sexual harassment [sometime in 2001]."  *Id.*

The plaintiff's arguments are off point and, therefore, do not rebut the defendant's nondiscriminatory explanation.  Noting that the officers chosen for deployment are all younger than the plaintiff merely restates his original claim, evading a direct response to the credibility, likelihood, or good faith of the defendant's proffered explanation.  *See, e.g.*, *Brown v. Koester Envtl. Servs., Inc.*, 78 Fed. Appx. 719, 719 (D.C. Cir. 2003) (affirming judgment for defendant

where plaintiff failed to cast doubt on defendant's nondiscriminatory justifications); *Brown v. Brody*, 199 F.3d 446, 458 (D.C. Cir. 1999) (hinging summary judgment on "whether the jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination"). Mere speculation that discriminatory animus motivated the defendant's decision does not create a genuine issue of fact for a jury. *Id.* at 459.

Likewise, the plaintiff's claim that the defendant refused to deploy him or to promote him in retaliation for his sexual harassment complaint cannot serve as adequate rebuttal evidence. The court will address the non-promotion claim later; for now, it suffices to note that the defendant raises a nondiscriminatory reason vis-a-vis non-promotion that the plaintiff does not satisfactorily rebut. As for the non-deployment, the plaintiff has not traced a path of causation that could lead to an inference of discriminatory retaliation. The Buffalo deployment decision was reached in September 2002, nine months after the end of 2001, the latest that the plaintiff might have complained about sexual harassment. The plaintiff admits that he filed no formal EEO complaint concerning the harassment. Short Dep. at 28. And the plaintiff has offered no evidence that Lieutenant Thomas was ever informed of the plaintiff's complaint or that anyone who was knowledgeable of his complaint was connected to the decision to deploy other volunteers to Buffalo. *See* Def.'s Mot. for Summ. J., Mitchell Decl. at ¶¶ 3-4 (denying that Short ever complained to him about sexual harassment and denying that he ever forwarded such a complaint to Thomas); *Holbrook v. Reno*, 196 F.3d 255, 260-61 (D.C. Cir. 1999) (affirming judgment as a matter of law for defendant where plaintiff had offered "no evidence" to establish that the person with the alleged discriminatory animus "was even involved in the decisionmaking

9

process"). Taken together, these facts do not permit an objective trier-of-fact to infer discriminatory retaliation. Because the plaintiff has failed to offer evidence that a reasonable juror might find refutes the defendant's explanation, the court grants summary judgment for the defendant on this claim.

### D. The Plaintiff Fails to Rebut The Defendant's Nondiscriminatory Reason for Its Non-Selection of the Plaintiff for Deployment to the Kentucky Derby

The plaintiff also claims that he was subjected to retaliation for his March 3, 2003 contact with his employer's Equal Employment Opportunity Office ("EEO") challenging the selection of Cassandra Talley for a temporary promotion to Sergeant when on April 30, 2003 he was not selected for a deployment to the Kentucky Derby. ROI-2, Ex. 5B. The person in charge of the Kentucky Derby deployment, Lieutenant Sampson, was instructed to select a team of nineteen officers. ROI-2, Ex. 16 ("Sampson Aff.") at 1. He avers that he read down a list of officer names seriatim, calling for volunteers. *Id.* He claims that he harbored no discriminatory animus and had filled the nineteen positions before he arrived at the plaintiff's name on the list. *Id.* The plaintiff finds this explanation "incredulous," in light of the fact that Sampson knew of the plaintiff's EEO complaint and should have identified the plaintiff as an ideal candidate because of his thirty-year tenure in the department. Pl.'s Opp'n at 10. The defendant replies that the plaintiff has failed to show why Sampson might harbor retaliatory animus against him, when the plaintiff's earlier complaint had nothing to do with Sampson. Def.'s Reply at 8.

That Sampson knew of the plaintiff's complaint regarding Talley's promotion does not address, much less rebut, the defendant's nondiscriminatory justification. It shows awareness but not involvement or motive. *See, e.g.*, *Bieber v. Runyon*, 1996 WL 525372, at *11 (D.D.C. Sept. 9, 1996) (granting judgment for defendant when plaintiff admitted that earlier complaint was not

based on actions taken by or in any way involving perpetrator of alleged retaliation); *Wada v. Tomlinson*, 517 F. Supp. 2d 148, 208 (D.D.C. 2007) (same); *Broderick v. Donaldson*, 338 F. Supp. 2d 30, 43 (D.D.C. 2004) (same). In fairness, the plaintiff's reference to his seniority might qualify as evidence rebutting the credibility of the defendant's justification, but the plaintiff fails to follow through by submitting evidence demonstrating that emergency deployments are conducted based on a list organized by seniority or some factor other than that proposed by the defendant.[4] For these reasons, the court grants summary judgment for the defendant on this claim.

### E. The Plaintiff Fails to Rebut The Defendant's Nondiscriminatory Reasons for Issuing Disciplinary Sanctions against the Plaintiff

On or about June 26 and July 18, 2002, Lieutenant Thomas issued two records of infraction to the plaintiff. Def.'s Mot. for Summ. J., ROI-2, Ex. 33, 34. The June 26 infraction charged the plaintiff with failure to obey an arrest order and use of offensive language toward his supervisor on June 8, 2002. *Id.*, Ex. 33 at 1, 3. Lieutenant Thomas recommended a 30-day suspension. *Id.* The July 18 infraction charged him with being absent without leave on June 29, 2002 and from July 3 until July 5, 2002, *id.*, Ex. 34 at 1-2, for which Lieutenant Thomas recommended a 5-day suspension, *id.* Captain Mitchell concurred with both recommendations. *Id.* And, on August 9, 2002, Don Walton, the Assistant Chief of Police, found the proposed penalty appropriate. *Id.*, Ex. 33 at 6. On August 29, 2002, the plaintiff was issued a notice of

---

[4]      Both of the parties could have developed these facts more. The defendant does not explicitly declare what type of list Sampson used to call for volunteers – How many officers were on it? How was it organized? Details of this nature would help to substantiate the defendant's claim that Sampson simply mechanically ran through names on a list. However, because the plaintiff fails to argue these points itself and in lieu offers nothing beyond speculation that (1) Sampson was negatively disposed against him and (2) Sampson discriminated in his selection of volunteers, the court must conclude that the plaintiff has failed to carry his burden.

proposed suspension signed by Deputy Director Dean Hunter. *Id.*, at Ex. 41. No change in the plaintiff's pay, grade, benefits or duty status occurred until a final decision was reached on the proposed suspension. Def.'s Mot. for Summ. J. at 22, ROI-2, Ex. 41 at 3. On September 19, 2002, the plaintiff visited the EEO office and lodged three allegations of discrimination, including the infractions and notice of proposed suspension. ROI-2, Ex. 3. On October 15, 2002, Hunter advised the plaintiff that the department had sustained the charges from the notice of proposed suspension, and was suspending him from duty and pay from October 22 until November 20, 2002. *Id.*, Ex. 27.

### 1. Failure to Obey Order to Arrest and Use of Abusive Language

The defendant proffers nondiscriminatory justifications for each of these decisions. As to the infraction charging failure to obey a superior's order to arrest, the record of infraction explains that on June 8, 2002, the plaintiff was informed that there was a report of a man with a gun located at the Ronald Reagan Building. ROI-2, Ex. 33. The plaintiff, a corporal serving that day as acting supervisor, responded and after arriving at the building briefed Lieutenant Thomas as to the situation. *Id.* Thomas instructed the plaintiff to charge the suspect and arrest him. *Id.* He asked him if he had a problem with the instructions, and the plaintiff stated that he did not. *Id.* Despite having received this explicit instruction at least three different times, the plaintiff released the subject and returned him his handgun. *Id.* Immediately thereafter, Thomas summoned the plaintiff to explain his decision. *Id.* at 3. Thomas states that the plaintiff "could not provide a logical reason why he released the subject." *Id.* After the conversation concluded, the plaintiff left Thomas's office and began complaining to officer Kevin Williamson about "the problem with these dumb black niggers." *Id.* Thomas overheard, stopped him, and asked if the

plaintiff was referring to Thomas. *Id.* The plaintiff replied that he was, that Thomas was a

"dumb black nigger" who thought he knew everything, which was why he had "so many

problems" and why none of the other officers liked him. *Id.*

Though advised in the notice of proposed suspension of his opportunity to respond to this

presentation of events, the plaintiff did not do so until October 23, 2002, after he was suspended.

ROI-2, Ex. 42. Neither at that time nor since has the plaintiff ever directly denied the allegations

concerning this incident. The plaintiff simply submits that (1) because he was acting supervisor

at the time and could not reach his supervisor[5], he had the authority to decide not to arrest the

subject; and (2) his decision was justified because he called the U.S. Attorney's Office for advice

about the subject, an out-of-state visitor who cooperatively disclosed that he had an unloaded

weapon in his trunk, and that office advised him that there was no reason to arrest the subject.

Pl.'s Opp'n at 11-12.

The plaintiff has not rebutted the defendant's nondiscriminatory justification to the extent

necessary to earn a jury trial. Significantly, he does not deny that he received at least three direct

orders from Lieutenant Thomas, his superior in rank, to arrest the subject. *See* Pl.'s Opp'n at 4

(disputing whether plaintiff complied with his direct supervisor's directives, but not whether he

complied with Lieutenant Thomas's). He does not argue that the chain of command that

reviewed and affirmed Lieutenant Thomas's findings and recommendation ignored exculpatory

evidence or arguments – because he never made any objections during the review process. Def.'s

---

[5]    The parties do not illuminate who, if not Lieutenant Thomas, was the plaintiff's direct
supervisor. Because the court's legal conclusion does not depend on the resolution of this fact,
the court assumes, per the plaintiff's representations, that Lieutenant Thomas was not the
plaintiff's direct supervisor.

Mot. for Summ. J. at 26-27.  Indeed, when the chain-of-command was investigating the report, it solicited a statement from officer Williamson that confirmed Thomas's presentation of events, and it reviewed statements confirming that, before the subject's release, Thomas ordered a background check that revealed an arrest record including guilty pleas to four felonies and fourteen misdemeanors.  ROI-2, Ex. 33 at 7, 10.  Moreover, every action taken by the defendant is within the guidelines of the defendant's disciplinary guide book.  *See* ROI-2, Ex. 22 (recommending "reprimand to removal" for first offense of insubordination, disrespect, or insolence; recommending "warning notice to suspension" for first offense of "use of abusive or offensive language").  And the plaintiff has submitted no evidence attempting to show that the department unfairly applied its disciplinary policy against him versus other employees.  *Cf. Curry v. Menard, Inc.*, 270 F.3d 473, 479 (7th Cir. 2001) (holding that plaintiff rebutted defendant's proffered nondiscriminatory justification for terminating plaintiff, maintaining a strict disciplinary enforcement policy, by presenting evidence that defendant did not terminate comparable employees of a different race who had committed the same infraction).  The plaintiff has not even provided evidence indicating that Thomas was aware of his prior EEO complaints: the sexual harassment complaint was not disclosed to Thomas; and the plaintiff's September 22, 2002 EEO complaint came after the notice of proposed suspension on August 29, 2002.  Def.'s Mot. for Summ. J. at 21-22.  The defendant's nondiscriminatory justification, therefore, precludes jury trial.

### 2.  Absence without Leave

Count 1 of the plaintiff's civil complaint references the July 18 infraction charging the plaintiff with being absent without leave ("AWOL") on June 29, 2002 and July 4, 2002.  It

alleges the defendant discriminated against the plaintiff based on his race, sex and age when it "disapproved his leave request to accompany his wife to the hospital for emergency surgery" and when it "refused to accept Plaintiff's medical documentation for illness because Plaintiff returned to work two days earlier than the medical slip indicated he should be out sick." Compl. ¶ 8. On June 17, 2002, the plaintiff requested leave for June 29, 2002. ROI-2, Ex. 34. On June 19, 2002, an office-wide memo denied leave to all FPS officers for the dates June 29 and July 4. ROI-2, Ex. 35. On June 28, 2002, the plaintiff submitted a leave slip for June 29 to Sergeant Sherrod, which was denied. ROI-2, Ex. 34, 34A. On June 28, 2002, the plaintiff submitted another leave request to Sherrod for June 29, 2002 in order to attend a wedding. *Id.* That same day, Captain Simms spoke with the plaintiff and Sherrod about leave for June 29, telling them "that no leave could be granted because of the demonstration that was planned for . . . June 29 or July 4 . . . . [Nevertheless] [a]s Cpl. Short left the office he stated that he would not be in." *Id.*, Ex. 36, 13.

The plaintiff did not report for duty on June 29, 2002. Instead, he called in a report of absence and requested emergency annual leave to take his wife to the hospital. *Id.* He spoke with Thomas, who denied his request and ordered him to bring in a doctor's slip. *Id.*, Ex. 34 at 1-2, 6. He reported for duty on July 2, but then on July 3 called in ill and was out through July 5. *Id.* at 2. On July 3, Simms informed Thomas of his conversation with the plaintiff and Sherrod. *Id.* Due, in the plaintiff's words, to "bad ongoing working relations with Lieutenant Thomas," he went over his head and instead gave Captain Mitchell a copy of a hospital registration form with his wife's condition and treatment. ROI-2, Ex. 42. He claims that he could not bring a doctor's slip "[b]ecause of Hospital shift changes." *Id.* The form indicates that the plaintiff was totally incapacitated from July 3 until July 8, 2002. ROI-2, Ex. 34 at 2. On July 18, the plaintiff

15

received a notice of infraction for his absences on these dates.  *Id.*

On August 29, 2002, the plaintiff received a notice of proposed suspension based in part on these events.  *Id.*, Ex. 14.  The notice states that the plaintiff was initially designated AWOL for June 29, 2002, but then notes that his status was changed to "approved" after he submitted the documentation of his wife's surgery.  *Id.* at 2.  However, the department did not accept his doctor's slip for his absences from July 3 through July 5, 2002, because (1) it did not include a description of the incapacitating medical condition; (2) it stated he was incapacitated from July 3 through July 8 but was dated July 3, and the plaintiff returned July 6 and even worked overtime; and (3) it contradictorily indicated that the plaintiff was, as of July 3, 2002, "sufficiently recovered . . . to resume a normal workload."  *Id.*

The defendant adverts to the above events as justification for the infraction notice and suspension.  The plaintiff insists that his documentation should have satisfied the defendant.  Pl.'s Opp'n at 13.  The court disagrees.  While Thomas may have initially categorized the plaintiff as AWOL for June 29, 2002, the final notice of proposed suspension accepted his certificate for his wife's surgery and approved his leave.  ROI-2, Ex. 41.  The plaintiff presents no evidence to rebut the defendant's justification for Thomas's initial decision, which was (considering the June 19 notice that leave was cancelled and the plaintiff's statement that he would not be in) based on a reasonable conclusion that the plaintiff took unapproved leave on June 29.  *See Smith v. Jackson*, 2008 WL 623230, at *16 (D.D.C. Mar. 10, 2008) (holding that defendant proffered legitimate, nondiscriminatory justification of AWOL charge against plaintiff by asserting that charge resulted from plaintiff's decision to ignore the revocation of his old work schedule and continue to work on the schedule he preferred); *Crittendon v. U.S. Post Office*,

1999 WL 313885, at *1 (6th Cir. 1999) (affirming summary judgment for defendant based on unrebutted explanation that AWOL charge against plaintiff resulted from the plaintiff's history of attendance problems).

As for the July 3 through July 5, 2002 absences, the plaintiff fails here too to rebut the defendant's explanation with evidence suggesting reprisal or discrimination. The plaintiff offers no arguments for why the court should find the defendant's quibbles with his doctor's certificate pretextual. He does not, for example, argue that the defendant scrutinized the certificate more rigorously than other officer's certificates. *See Singleton v. Potter*, 402 F. Supp. 2d 12, 39 (D.D.C. 2005) (considering plaintiff's claim that she was subjected to heightened scrutiny for absences by employer's requirement that she produce doctor's certificate). In any event, such scrutiny was not presumptively discriminatory considering the plaintiff's advanced vocal warning that he would not attend work those days. *See Vickers v. Powell*, 2005 WL 3207775, at * 22 (D.D.C. Nov. 21, 2005) (crediting defendant's justification of enhanced scrutiny of plaintiff-employee's leave based on plaintiff's abnormally frequent absence from work for health reasons); *Childs-Pierce v. Utility Workers Union of Am.*, 383 F. Supp. 2d 60, 73-74 (D.D.C. 2005) (recognizing as nondiscriminatory a defendant's heightened scrutiny of a plaintiff's asserted sick leave when medical information did not indicate medical condition and plaintiff's behavior at work did not suggest any incapacity). Nor does the plaintiff argue that the punishment of five days' suspension is unusual. In fact, the chain-of-command unanimously approved Thomas's recommendation. Def.'s Mot. for Summ. J. at 25-27. And, the plaintiff incurred no additional sanction for this infraction, as his suspension effectively ran concurrently with the 30-day sentence from the other infraction. *See* ROI-2, Ex. 27 (imposing a total

suspension of less than 30 days, running from October 22 until November 20, 2002). For these reasons, the court concludes that the defendant's justification bars jury trial on these claims.

### F. The Plaintiff Fails to Rebut the Defendant's Nondiscriminatory Reason for the Misplacement of His Weapon, Work, Vehicle, and Supplies and the Denial of Leave

The plaintiff alleges that a series of discrete acts by the defendant occurring from November 21, 2002 through January 1, 2003 constitute continuous retaliation creating a hostile work environment. The alleged acts of harassment are: (1) the plaintiff's pistol was unavailable on November 21, 2002; (2) the plaintiff was issued his weapon but no vehicle and had to use a spare vehicle without his own equipment and supplies on November 22, 2002; (3) the plaintiff was assigned a vehicle but could not drive it home on November 26, 2002; (4) on November 27, 2002 the plaintiff signed for a new vehicle but received a 2000 model whereas his old one was 2002, and his equipment and supplies were still missing; (5) the plaintiff was denied leave for Thanksgiving Day on November 28, 2002 by Thomas; (6) the plaintiff's equipment and supplies were returned to him on December 3, 2002, but two computer speakers, a power inverter and cleaning supplies remained missing until December 5; (7) on December 18, the plaintiff learned that Thomas denied the plaintiff's request for leave for December 25 but approved his request for December 24; (8) on December 28, the plaintiff learned that his leave request for January 1, 2003 was denied but approved for December 31, 2002. Short Dep., Ex. 4.

The defendant proffers nondiscriminatory explanations for these events. The plaintiff's pistol was unavailable because it had been placed in storage during his suspension and had not been retrieved for his first day back at work. Def.'s Mot. for Summ. J. at 33. Likewise, his vehicle had been reassigned to another officer while he was on suspension, as the department has more officers than vehicles. *Id.* The plaintiff's equipment and supplies were stored for

safekeeping and were all (except for a window cleaner, armor all, and dust mop) returned to him within a couple weeks. *Id.* at 34. The plaintiff received one day's holiday leave for Christmas and one day for Thanksgiving instead of his requested two because he was needed for work those days. *Id.*

Here again, the plaintiff does not challenge the defendant's explanations. He simply makes generalized assertions that he "had to eat crow everyday for nine years," and "was constantly subjected to an environment permeated with discriminatory intimidation, ridicule, and insult," invoking the formula of a hostile work environment claim without articulating specific events or facts. Pl.'s Opp'n at 15. He then reiterates his characterization of the above events as insult, ridicule, and mistreatment. *Id.* at 15-16. The plaintiff has submitted no arguments or facts that would lead to an inference that the defendant's justifications concealed discriminatory retaliation or harassment. Moreover, the credibility of the defendant's justification is substantiated by its reference to department policies approving many of the above events. *See* Def.'s Mot. for Summ. J. at 33 (citing ROI-2, Ex. 28 (affirming department policy that weapons are stored at pistol range during an officer's suspension), Ex. 8 (affirming department policy that vehicle are reassigned when driver is unavailable for a long period of time)). The plaintiff's failure to rebut these explanations precludes him from taking this claim to a jury.

### G. The Plaintiff Fails to Rebut The Defendant's Nondiscriminatory Reason for the Non-Promotion of the Plaintiff to the Temporary Acting Sergeant Position

In January 2003, Lieutenant Maybelle Hallman was instructed to select good officers without disciplinary problems to be members of a new Homeland Security unit. ROI-14, Ex. 5C ¶ 2. The defendant asserts that Hallman went through the Navy Yard roster and selected officers that she considered best suited for the assignment based on her own experience with the officers

and their reputations.  Def.'s Mot. for Summ. J. at 36.  One of the officers she chose was Lead

Police Officer Cassandra Talley.  ROI-14, Ex. 5C ¶ 2.  After Talley went on the detail,

management gave her a temporary promotion effective February 23, 2003 for 120 days to the

position of Supervisory Police Officer.  *Id.*, Ex. 9.  During February and March 2003, two other

officers received temporary promotions as well: Isaac Jackson and Maurice Williams.  *Id.*, Ex.

12.  During the same time, the plaintiff's title was Lead Police Officer, and his duties included

serving as acting supervisor when the supervisor was unavailable.  *Id.*, Ex. 8, 6.  The plaintiff

complains that he was discriminated against based on his age when the defendant did not

promote him to a temporary position of sergeant or supervisor.  *Id.*, Ex. 5A ¶¶ 7-8.

The defendant proffers nondiscriminatory justifications.  When the new detail was being

set up, the possibility of temporary promotions was adopted as an incentive to encourage officers

who might be concerned about volunteering for a fixed post at Homeland Security Headquarters,

and to ensure their morale remained high.  *Id.*, Ex. 5B ¶¶ 1, 3.  The plaintiff does not specifically

rebut the defendant's justification.  He merely reiterates the generalized allegation that the

defendant never promoted him even though he worked for the defendant for over thirty years and

had a good record and no disciplinary actions.  Pl.'s Opp'n at 7.  The plaintiff also insists that

"[t]he fact that a substantially younger employee was given a position for which none of the other

older employees were told about or given an opportunity to apply, reeks of discrimination."  *Id.*

at 9.

As for the plaintiff's argument that the lack of prior promotions during a long career of

good service gives rise to an inference of discrimination, the court disagrees.  The plaintiff cites

no other specific instances when the plaintiff sought a promotion or was potentially denied the

opportunity to compete for one. A prima facie case of employment discrimination is not made

when a plaintiff simply argues, without identifying a specific promotion opportunity that he

sought and wad denied, that an inference of discrimination is warranted based on a lack of career

advancement despite longevity and good behavior. *See McDonnell Douglas Corp.*, 411 U.S. at

802 (establishing, as one element of prima facie discrimination case, "that [plaintiff] applied and

was qualified for a job for which the employer was seeking applicants");[6] *Czekalski v. Peters*,

475 F.3d 360, 364 (D.C. Cir. 2007) (recognizing that, even once defendant has proffered a

nondiscriminatory justification the court evaluates plaintiff's prima facie case as part of the

evidence of whether plaintiff has created a genuine issue of discrimination).

    The plaintiff's reliance on the fact that the three officers who received promotions in

2003 were younger than him does not support an inference, either. In the first place, two of those

officers (Jackson and Williams) were born in 1945 and 1947, making them only two and four

years younger than the plaintiff, born in 1943. Def.'s Mot. for Summ. J. at 37-38; *see Grosjean

v. First Energy Corp.*, 349 F.3d 332, 338-40 (6th Cir. 2003) (holding that age difference of six

years or less between plaintiff and comparator is not substantial indirect evidence of age

---

[6]    The most that can be said for the plaintiff's position is that he raises a claim of continuing
discrimination, in that he performed the duties of a sergeant over several years but never received
commensurate pay or promotion. But, "the fact that a plaintiff is the victim of a series of
repeated rejections for promotion does not, without more, establish a plan or practice of illegal
discrimination." *Howell v. Sullivan*, 1992 WL 443441, at *6 (D.D.C. Mar. 9, 1992). The
plaintiff presents no evidence linking his salary level with a discriminatory animus on the part of
his employer. *Id.* Nor does he demonstrate that his work as a Lead Police Officer was
equivalent to that of a Supervisory Police Officer (Sergeant), which is that of a full-time, first-
line supervisor. ROI-14, Ex. 7, at 11. For example, during the 120-day period congruent with
Halley's promotion to sergeant, she worked full-time as a supervisor, Def.'s Mot. for Summ. J.,
Hallman Decl. ¶ 3, while the plaintiff worked only two days, ROI-14, Ex. 11.

discrimination).  Moreover, the plaintiff fails to address the defendant's countervailing justifications; namely, that the plaintiff had recent disciplinary issues, ROI-14, Ex. 5C ¶ 2 (affirming that plaintiff's name never came up but, even if it had, he could not have been a candidate because of his recent disciplinary issues); that he was not assigned to the Homeland Security Unit; and that the decision not to advertise the position was done for administrative not discriminatory purposes, *id.*, Ex. 2D at 27 (declaring, per agreement between Government Services Administration and American Federation of Government Employees, that competitive procedures only apply to temporary promotions of more than 120 calendar days).  The court, therefore, concludes that the defendant has proffered a nondiscriminatory justification that the plaintiff has not rebutted, precluding jury trial on his claim.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary judgment. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 27th day of May, 2008.

RICARDO M. URBINA
United States District Judge
